Curia, per Frost, J.
It is not necessary for the decision of the motion for a new trial to consider the question, which has been principally urged in the argument, whether the-parol license, which the defendant alleges was given to him, by Joseph Edwin McKenzie, before the construction of his mill dam, to overflow the land of Joseph,,was irrevocable and a bar to an action by Joseph and all persons claiming under him, for any damage which may be sustained by such overflow, so long as the mill erected by the defendant may stand, and be used. On the trial, the'Jury were instructed on this question, as the defendant affirms the law to be. If the instruction were confirmed by the judgment of this Court, the defendant would derive no advantage on a second trial which he had not on the.first.
The defendant was allowed to reply, in evidence, on his special plea of license. When the plaintiff had rested his case, the defendant produced his evidence, in chief, to support the plea of license. This consisted of the acts of Joseph E. McKenzie, from which his license to the defendant to erect the mill-dam might be inferred, aud.of the declarations of Joseph E. McKenzie to several persons, affirming or implying such license. The plaintiff gave in evidence the declarations of *41 Joseph E. McKenzie to Jefferson Clinton, negativing the grant of the license. The defendant then offered, in reply, the deposition of Joseph E. McKenzie, to the effect that he' had permitted and consented to the overflow of his land by the defendant’s mill-dam. The Circuit Judge held that the deposition of Joseph E. McKenzie was not properly evidence in reply, and excluded it.
The rejection of this evidence has been strenuously urged as a ground for a new trial, and requires a consideration of the rules and practice which govern the admission of evidence on the trial of a cause.
The rules by which the examination of a witness is conducted, govern, to a great degree, the admission of evidence on the issue. In the cases which will be cited, and- in most of those in which the question is made, it will be seen that the admissibility of evidence in reply, is decided by analogy to the practice in the examination of a witness; and the same test which is applied to determine whether a question put to the witness is proper, in reply, decides whether evidence offered is proper, in reply. The plaintiff, or actor in the issue, in the examination of his witness, is required to elicit and disclose everything material to his case to which the witness can testify. If he omit to interrogate the witness as to any material fact, in the examination in chief, the-question cannot be asked in reply without leave of the Court, When the defendant cross-examines the witness, he must exhaust the subject of his defence, whether the examination be directed to qualify, neutralize or discredit the testimony which the witness may have given on his examination in chief, or to lay the foundation of his defence in any new matter in the knowledge of the witness. The questions of the plaintiff, in reply, are strictly confined to the particulars of the witness’s evidence in the cross-examination.
In like manner the plaintiff must, in the first instance, produce and disclose the entire evidence in support' of his Case; the defendant next offe'rs all his evidence in defence; the plaintiff then replies, and is restricted in the evidence he may introduce, to a direct answer to the defendant’s case. In Peters v. Consequa, after the defendant had closed,' the plaintiffs offered to examine witnesses as to the custom spoken of by defendant’s witnesses, in relation to the purchasing tea in China, By the Court, 11 In your opening, you examined witnesses on this subject, and, as nothing new in relation to it has been given in evidence, it would be improper in the plaintiffs again to examine witnesses respecting it.” In Giles v. Hills, Best, C. J., stated the rule (in which C. J., had expressed his concurrence) to be, never to allow a witness to be called back to get rid of any difficulty on the merits, or anything which went to the justice of the case; he *42 allowed it to be done to get rid of objections which were bggjde the justice of the case, and little more than mere matter of form. In George v. Radford, which was an action for malicious arrest, the plaintiff’s counsel had closed his case, and defendant’s counsel had begun to address the Jury, when Tenterden, C. J., said he would nonsuit, on the ground that there was no evidence of malice. The plaintiff’s counsel wished to adduce further evidence; but it was refused, the Chief Justice saying, “ If you had more evidence, you should have adduced it before you closed your case. I can’t receive it now. The rule has been relaxed very much, perhaps too much." Rex v. Stimpson was an indictment for stealing peas from a granary. The prosecution rested on the fact of the peas being fouud in the house of the defendant. For the defendant, his daughter testified, that he had bought the peas from one Taylor. The attorney for the prosecution offered Taylor asa witness’to prove that the prisoner did not buy the peas from him, but, on the contrary, that Taylor saw the defendant steal the peas, and assisted him in doing so. It was held by Garrow, B., that the prosecutor could only contradict the specific facts testified by the defendant’s daughter; as, that Taylor did not sell the peas, or the like; that, being a witness in reply, his testimony was only admissible so far as it might go to destroy the case set up by the defendant. Knapp v. Marshall, after the plaintiff had given evidence of the it.ems of his account, and that the charges were reasonable; for the defendant, several surveyors were called, who stated that they had surveyed the work in 1831, and the amount of plaintiff’s charges was £100 too high. The plaintiff offered, in reply, a letter from the attorney of the defendant .to the .plaintiff, stating that the defendant had had a survey of the work, in 1829, and the surveyor thought the charges £60 too high. It was objected that this evidence was not in reply. Tenterden, C. J., held that if the plaintiff meant to rely on this letter, he should have produced it as part of his original case, and the evidence was rejected.
This case presents an extreme, even if it be a proper application of the rule. But, with the other cases, it is cited to show the practice of the Courts in Westminster. Th'e rule is most salutary, in its fitness to prevent trickery, and is necessary, in many cases, to prevent surprise and injustice. Witnesses can with difficulty be kept in attendance on the Court after they have given their testimony, and the defendant might be taken at great disadvantage if the plaintiff were permitted to return to his evidence in chief and renew the attack, after the defendant had closed his case and his witnesses had left the Court. This rule, like many others for the conduct of a trial, cannot, however, be rigorously and uniformly enforced. Much must, of necessity, be left to the *43 discretion of the Judge. Whenever evidence has been inadvertently omitted, the uniform practice of our Courts is tov permit the party to supply the omission, unless it is apparent that it will operate injustice to his adversary.
The testimony of Joseph E. McKenzie, that he had given permission to the defendant to erect the dam, did not contradict the evidence of Jefferson Clinton that, on some occasion, McKenzie held the conversation with the witness which he related. The direct effect of McKenzie’s testimony was not to destroy the case made by the plaintiff, but to strengthen the case made by the defendant. McKenzie had been examined by the defendant, and his deposition should have been produced with the other evidence in chief. But the defendant declined to do so, though cautione d that, if not strictly in reply, it would be excluded.
The other grounds of appeal may be briefly disposed of. When the defendant supported his claim to the license entirely by proof of the declarations of Joseph E. McKenzie, it was clearly competent for the plaintiff to offer declarations of McKenzie to the contrary; and when the defendant, in order to reduce the plaintiff’s damages, by showing a malicious design in his purchase of the land overflowed, gave evidence that the plaintiff had said, “he was watching a chance, and was glad he had got hold of defendant — that he had bought the land for the express purpose” — the plaintiff could only reply to this charge of a malicious motive, by evidence of what passed at the treaty for- the purchase. What the plaintiff was then proved to have said formed a part of the res gestee, and is not liable to the suspicion of having been said to counteract any indiscreet expressions of ill will towards the defendant. The evidence could not have had much effect; but the question now only concerns its competency.
The grant of a mere license to flow the plaintiff’s land transferred no property. If it were claimed by defendant as an easement, his defence would entirely fail, because an easement can only be created by deed, or arise from prescription. The license could only operate as a remitter of damages for an overflow of the plaintiff’s land by the defendant. The plaintiff, then, is not entitled to costs on his verdict tor five dollars.
The motion is dismissed.
Evans, Wardlaw and Withers, JJ., concurred.

Motion refused.