BRIDGER v. ASHEVILLE & SPARTANBURG R. R. COMPANY.

1. In action by a father against a railroad company to recover damages resulting from injuries received by his son, a lad of ten years of age, while playing on an unlocked turn-table of defendant, testimony is admissible as to the lad's intelligence and his capacity to know and understand the danger, but not as to his prudence or recklessness in encountering it.
2. Evidence offered by plaintiff of former accidents upon this same turn-table was properly excluded—knowledge of such accidents not having been brought home to defendant.
3. The father having nursed his boy while suffering from the injuries

received, the judge charged the jury that contract wages lost by the father while so nursing was a proper element in the measure of damages, but that speculative and uncertain earnings were not. *Held*, that this charge was as liberal to the plaintiff as the law allowed.

4. In this action, the record of a former action of the son, by the plaintiff as his guardian *ad litem*, against this defendant to recover the damages of the son by reason of the same injuries, was properly excluded. It was *res inter alios acta*.

5. Plaintiff having proved that one railroad company kept its turn-table locked, defendant was properly permitted to show in reply, and as an element in the question of negligence, that other well regulated railroad companies did not keep their turn-tables locked.

6. Plaintiff was not permitted to testify whether he thought it possible that his children could have visited the turn-table without his knowledge—whether his children had spoken to him of any such visit—when was the first time he had heard of such visit—and whether, if they had previously visited it, he or his wife would have known it. *Held*, that these questions, calling for opinion, hearsay, and inference, were properly excluded.

7. The injury complained of having been received in North Carolina, the law of that State as to the age at which a boy may be guilty of contributory negligence (as shown by a decision of her court of last resort, introduced in evidence in this case), must govern an action brought in this State upon this cause of action.

8. The boy being between the ages of 10 and 11 when the injuries were received, the trial judge could not properly charge that the boy could contribute to the injury nor that he could not, but properly charged the jury that the test of the boy's capacity for contributory negligence was his age, his intelligence, his ability to know and appreciate the danger of his surroundings—provided North Carolina law did not fix the age.

9. Evidence of the boy's caution, prudence, recklessness, or impetuosity as an excuse for contributory negligence was properly excluded.

10. On motion for new trial, the judge properly refused to receive testimony to show that one of the jurors in the cause had stated that he had made up his mind before the testimony in court was given to find for the defendant.

Before FRASER, J., Spartanburg, October, 1886.

This was an action by Joseph P. Bridger against the Asheville & Spartanburg Railroad Company, commenced in December, 1883, to recover his damages resulting from injuries done his son, Edgar, while playing on defendant's turn-table at Henderson-

ville, North Carolina, on November 4, 1881. The elements of the damages claimed were expenses incurred, services rendered by plaintiff and his wife, loss of the son's services, abandonment of a profitable business, and employment of an agent—aggregating twelve thousand dollars.

On November 4, 1881, the turn-table of defendant, near its depot in Hendersonville, was fastened with a bolt or chock, but was not locked. Edgar Bridger, aged 10 years and 10 months, together with some other children, were playing on this turn-table, which they had unbolted and were pushing around, when little Edgar was painfully and permanently injured in both legs. For the injuries so received, Edgar Bridger recovered damages from the railroad company, his father, the present plaintiff, being his guardian *ad litem* in that action. See 25 *S. C.*, 24. Pending that case, the present action was instituted. The rulings of his honor, the Circuit Judge, upon questions of testimony and in his charge to the jury, are sufficiently stated in the opinion of this court. The verdict was for the defendant.

The plaintiff moved for a new trial, on the ground that the verdict was contrary to the law and the testimony, and also upon the ground that one of the jurors had stated that he had made up his mind to find for the defendant before the testimony in court was given. The plaintiff stated that the witness was present in court whom he proposed to introduce and have sworn in order to sustain this allegation. Defendant's attorney stated to the court that they had been informed that witness had stated the matter differently to others. No previous notice upon this point had been given to defendant's counsel. His honor stated that he would hear anything looking towards fraud or corruption, but unless there was some such charge made he could not go into the jury room to ascertain the reason influencing their verdict—plaintiff's counsel stating that he made no such charge. His honor ruled that such testimony was incompetent on a motion for a new trial, and refused to hear the witness or to grant a new trial.

*Messrs. J. S. R. Thomson* and *Bigby & Dorsey*, for appellant.

*Messrs. Duncan & Sanders,* contra.

November 1, 1887.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SYMPSON.   In this action the plaintiff sought to recover damages for injuries inflicted upon his son, a boy of tender years, by negligence of the defendant corporation, as alleged.   The injury complained of was done in North Carolina, County of Henderson, at a turn-table of defendant.   The defence, 1st, denied the negligence, and, 2nd, relied on contributory negligence on the part of the child.   The verdict was for the defendant, and the plaintiff has appealed upon thirty exceptions.

These exceptions, or at least so many of them as raise questions for our consideration, may be grouped under four heads, as follows: 1st. Those that complain of error in the Circuit Judge's ruling upon the competency of certain testimony offered, embracing exceptions from one to thirteen inclusive.   2nd. Those that complain that his honor refused to charge without qualification certain requests of plaintiff, embracing exceptions 17, 18, 19, 20, and 21.   3rd. Those complaining of his honor's charge and refusal to charge in reference to the application of the law of North Carolina in a case of this kind—exceptions 22, 23, and 26. And 4th, those complaining of his honor's charge that the age and intelligence of the boy were the tests of his capacity to commit contributory negligence, excluding questions of prudence, childish propensities, and impulses.

Under the first group we find the first allegation of error to be, that his honor allowed one Dr. Allen to testify "that he thought the boy did not act prudently in going on the turn-table." In turning to the Brief, folio 21, it will be seen that his honor excluded this testimony.   Upon its being offered the plaintiff objected, and after discussion the objection was sustained.   The 2nd allegation is, that his honor erroneously excluded the testimony of one Crossby as to the judgment and discretion of the boy, especially as to danger.   His honor excluded this testimony upon the ground that the only pertinent inquiry upon this subject, was as to the capacity and intelligence of the boy, his capacity to know and understand the danger, and not as to his prudence or recklessness in encountering it.   We think his honor was right in his ruling here, for reasons to be given under the

discussion of the 4th and last group of exceptions, which involve substantially the same principle. The 3rd allegation of error is the same in substance as the 2nd.

The 4th complains that his honor excluded the testimony of Mrs. McConnell of former accidents upon the turn-table. This testimony was excluded unless knowledge of said accidents was first brought home to the defendant, which was not done. One important rule of evidence is, that testimony to be competent must be pertinent to the issue. The issue here was negligence. We do not see how former accidents happening at this turn-table could be pertinent to said issue, in the absence of all knowledge thereof by the defendant.

The 5th objects to the exclusion of Charles C. Haskell's testimony as to the monthly earnings of the plaintiff. The plaintiff at the time his son was injured was in the employment of the Henry Hill Publishing Company as agent for the sale of books, and the testimony of Haskell was intended to show how much he earned monthly at this business, the plaintiff claiming that he should recover from the defendant the value of his son's services, the value of his own services as a nurse to his son, and his monthly earnings as agent of the publishing company, which he alleged that he lost in consequence of being compelled to nurse and attend to his son while injured, or at least the difference between what he could have earned and the amount of $400, which it seems he paid some one to attend to his agency. This latter item his honor ruled out, and, therefore, excluded the testimony of Haskell upon this point, saying however: "That if the plaintiff could recover for his loss of time in his agency, it could not be speculative and uncertain wages, but must be contract wages," of which there was no evidence in the case.

We think the general rule in cases of this kind, is that of master and servant, which would include necessary expenses of medical attention, nursing, &c., and the services of the injured party. His honor seemed inclined to extend this rule here in view of the fact that it was proper that the father should become the nurse of his injured boy, and if contract monthly wages had been lost by the father, under his honor's ruling they might have been proved, but speculative and altogether uncertain earnings he

excluded.    We think his honor was as liberal to the plaintiff as
the law allowed.    The 6th is the same in substance as the 5th.

7th.    There had been a previous action on account of this injury
in behalf of the boy, the plaintiff here, his father, being his guar-
dian *ad litem*, which resulted in a verdict of $5,000 for the plain-
tiff.[1]    The record in said case was offered here by the plaintiff;
it was excluded, and this is the ground of the 7th allegation of
error.    The rule of evidence *supra* which requires that the testi-
mony offered in a case should be pertinent to the issue, we
think excluded this record.    It was *res inter alios acta*, and
had no application or pertinency to the case in hand, and, there-
fore, his honor's ruling was correct.

The 8th complains of the exclusion of certain questions to
witness Grambling tending to show enmity between him and the
plaintiff.    We do not find in the Brief that these questions were
excluded; on the contrary, Grambling seems to have testified
fully, and without objection.

The 9th complains of the admission of testimony from Divine,
Bass, and Bernard as to customs of well regulated railroads in
reference to locking and guarding their turn tables.    His honor
admitted this testimony, saying in substance at the same time,
that while it was no defence to say that other railroads did the
same thing, inasmuch as railroads have no right to make rules
of negligence, yet the question being one of negligence, this fact
might be an element in that question, especially in this case where
the plaintiff had undertaken to prove that one railroad company
did in fact lock its turn-table.    And in reply to this testimony
he held it competent.    With this qualification, there was no
error.

The 10th, 11th, 12th, and 13th complain that his honor refused
to permit the plaintiff to testify whether he thought it possible
that his children could have visited the turn-table without his
knowledge—whether his children had mentioned to him of any
such visit—when was the first time he had heard of such visit,
and whether, if they had visited said turn-table before the evening
of the accident, he or his wife would have known it.    These ques-
tions were properly excluded, as they mostly called for opinions,

---

[1] See 25 *S. C.*, 24.

hearsay, and inferences, none of which, under the rules of evidence, were admissible from the witness. The testimony of witnesses, as a general rule, is confined to facts, with some exceptions, not applicable, however, here.

The 14th is the same in substance as the 2nd and 3rd, *supra*.

This brings us to the second group of exceptions, in which complaint is made that his honor charged the requests of plaintiff made in several forms: "That children of tender years could only be held responsible for contributory negligence according to their age, capacity, and development," as good law, unless the jury came to the conclusion that the law of North Carolina fixed an age at which they were to be held responsible as adults. The appellant objects to the qualification and proviso as to the North Carolina law. In other words, these exceptions complain that his honor held that the North Carolina law was applicable to the case, and if that law had modified the common law, it should control the jury. This question is the same as that involved in the third group of exceptions. So that, without stating the exceptions *seriatim* in either of these groups, we will now consider this single question upon which they all depend.

His honor held, that in one sense all law in North Carolina, as well as in this State, was statute law, inasmuch as the body of the common law had been adopted by statute in both; but independent of this, that the decisions of the highest tribunal in North Carolina constituted the law there, just as much as if enacted by the legislature, and therefore it made no difference in this case how it had been declared law in North Carolina that children of a certain age should be regarded legally capable of contributory negligence, yet if such a law had been announced, either by decisions in the court of last resort or by act of legislation, it was the law of the case then before the court, although it might be contrary to law of South Carolina.[1] We think his honor's ruling upon this subject was correct. The cause of action arose in North Carolina. The injury was inflicted there, and if the parties had remained in that State and brought action there, they would have been compelled to stand or fall by the law there.

[1] Defendant introduced in evidence the case of *Manly* v. *Railroad Company*, as reported in 74 *N. C.*, at page 655.—Reporter.

And we cannot see upon principle how stepping over the line could give the plaintiff a new and altogether enlarged cause of action—in fact, a cause of action which he did not have before, and, therefore, which he could not have enforced in the tribunals having jurisdiction of the matter at its origin.    All this is upon the assumption that the injured boy was over the age fixed by the law of North Carolina, and that he contributed to his own injury. In such a case the plaintiff would have had no cause of action in North Carolina, and having no cause in North Carolina where the injury was inflicted, he could have none here.    See cases of *Atlanta & Charlotte Airline R. R. Co.* v. *Tanner*, 68 *Ga.*, 384; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Moore*, 29 *Kan.*, 642.

His honor charged generally, that the test of the boy's capacity for contributory negligence was his age, his intelligence, his ability to know his surroundings, and the danger of what he was doing with the turn-table, and if the jury found as matter of fact that that boy had sufficient intelligence, &c., &c., to know and understand these things, all of which was for them, that then he would assume to charge that such one was subject to the rules of ordinary care and diligence, and failing to exercise the same would defeat the right of the plaintiff to recover here, if he contributed to his injury.    This general charge is made the cause of the exceptions embraced in the 4th group, *supra.*    The injured boy does not seem to have been so young as to have required the judge to say that he could not contribute to his injury.    Nor was he of that age where the presumption would necessarily arise in the absence of testimony to the contrary that he could.    Under these circumstances his honor left the question very properly to the jury, resting it upon the intelligence and capacity of the boy, as was done in the former case of Edgar Bridger against this defendant—provided, however, that the North Carolina law did not establish a different principle by fixing a certain age, which the judge also left to the jury, with a very strong intimation that it had not, of which, of course, the appellant has no cause of complaint.    We find no warrant of law which would have authorized the judge to extend the principle so as to have allowed testimony as to the caution, prudence, recklesness, or impetuosity of the

boy, as an excuse for contributory negligence, notwithstanding his intelligence and capacity should have taught him better. We do not think the cases cited and relied on by appellant controvert this principle.

The 15th exception complains that his honor, on the motion for new trial, refused to allow testimony to show that a juror had formed an opinion before hearing the case. We think his honor's ruling here is sustained by the principles laid down in the cases referred to by the respondent, to wit: *McCarty* v. *McCarty*, 4 *Rich.*, 594, 47 *A. D.*, 585; *Pulaski & Co.* v. *Ward & Co.*, 2 *Id.*, 122; and *Josey* v. *Railroad Co.*, 12 *Id.*, 136.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.