Richard M. WRIGHT, Plaintiff,

v.

The CHARLES PFIZER & CO., Inc., Defendant.

Civ. A. No. 8533.

United States District Court
D. South Carolina,
Charleston Division.

May 11, 1966.

Arthur C. Baker (now deceased), Ben Scott Whaley, Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for plaintiff.

Wm. H. Grimball, Jr., Grimball & Cabaniss, Charleston, S. C., for defendant.

SIMONS, District Judge.

This action was commenced in the Court of Common Pleas of Charleston County, South Carolina. The defendant removed to this court on the basis of diversity of citizenship, the plaintiff being a citizen of South Carolina and the defendant, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York. A trial by jury resulted in a verdict for the plaintiff in the sum of One Hundred Fifty Thousand ($150,000.00) Dollars actual damages and Twenty Thousand ($20,000.00) Dollars punitive damages.

The defendant now moves that the verdict be set aside, that the judgment entered be vacated, and that a new trial be granted to the defendant upon ten grounds set forth in its motion. Defendant also moves alternately that it be granted a new trial *nisi* upon ground that jury's verdict for actual damages was so excessive as to indicate undue liberality on its part.

The defendant's third ground for its motion is that the verdict was so grossly excessive as to warrant the conclusion that the jury was motivated by caprice, passion, prejudice, or other improper considerations.

In a number of well considered opinions the South Carolina Supreme Court has gone fully into the applicable principles of law which should govern a trial judge

in determining whether or not the verdict of a jury should be disturbed on the ground of excessiveness, Haselden v. Atlantic Coast Line R. R., 214 S.C. 410, 53 S.E.2d 60, 70 (1949). The Court cited and quoted with approval from the opinion of our own District Judge, The Honorable C. C. Wyche, sitting by designation in the Eastern District of Pennsylvania, in Jones v. Atlantic Refining Co., 55 F.Supp. 17 at page 20, when he stated:

> "When there is any margin for a reasonable difference of opinion in the matter, the view of the Court should yield to the verdict of the jury rather than the contrary." * * *

> "The court must respect the verdict of the jury in fact as well as in pretense or theory and must not interfere or substitute its own judgment for that of the jurors, for to do so would violate a constitutional privilege to have the fair verdict of the jury and not the fair judgment of the court." * * *

The rule is: The trial judge will not interfere with a jury's verdict simply because it is greater than his own estimate. Only where the verdict is so grossly excessive as to shock the conscience of the court and clearly manifest that it was the result of caprice, passion, partiality, prejudice, corruption, or other improper motives, will the court intervene. In determining whether a verdict is excessive it must be remembered that the maximum amount which a jury might properly award as damages under the evidence in a personal injury case cannot be determined with any degree of certainty, and must be largely a matter of judgment. The view most favorable to the plaintiff must be inferred from the evidence, and if there is substantial evidence to sustain the verdict it will not be disturbed.

In a very recent opinion, Lipscomb v. Poole, 147 S.E.2d 692, (1966), the South Carolina Supreme Court again said:

> We have held in numerous cases that this Court will not set aside a verdict because the amount thereof is such as to indicate merely undue liberality on the part of the jury. The power in such case to set it aside or reduce it by granting a new trial *nisi*, rests with the trial judge alone. It is only when the verdict is so grossly excessive as to indicate that the jury was moved by passion or prejudice or other considerations not founded on the evidence and the instructions of the trial court, that it becomes the duty of this Court, as well as of the trial court, to set it aside absolutely. Where the amount of the verdict bears a reasonable relationship to the character and extent of the injury and damage sustained, it is not excessive. Ray v. Simon, 245 S.C. 346, 140 S.E.2d 575. The amount to be awarded for personal injury and the resulting pain and suffering cannot be determined from evidence of value, for there is no market value on such items. The facts of each case determine the value to be placed on such elements of damage. Bruno v. Pendleton Realty Co., 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333.

This Court is also mindful of the provisions of Rule 59 of the Federal Rules of Civil Procedure empowering district judges to grant new trials in proper cases, and the guide lines for such action where verdicts are so excessive as to require a new trial proclaimed by the Fourth Circuit in Aetna Casualty & Surety Company v. Yeatts, 122 F.2d 350 (1941), and Williams v. Nichols, 266 F. 2d 389 (1959). The duty is mine to weigh *all* the evidence with a view of determining whether the jury's verdict is against the clear weight thereof, and whether to let such verdict stand would result in a miscarriage of justice.

Considering the weight of the evidence, the following facts were adduced at the trial of this case.

Richard M. Wright, plaintiff, as an agent for his drug manufacturer, and agents of defendant drug manufacturer had set up adjacent display booths at assigned locations immediately outside of a conference room at the Francis Marion Hotel in Charleston, South Carolina, then

being used by the South Carolina Medical Association Convention. The last day of the convention, toward the close of the proceedings, several of the manufacturers' representatives, including the defendant's agents, began dismantling their displays. Plaintiff continued his exhibit, and while standing inside his booth, thus engaged in conversation with the president of the association, was struck on the head by a six pound bar that had fallen from the top piece of the defendant's booth. One of defendant's agents testified at trial that he had cautioned his coworker not to dismantle the booth until he returned since the dismantling should require more than one person. This other agent proceeded alone to dismantle defendant's booth, and plaintiff's injury resulted.

Plaintiff's injury was characterized at trial by medical experts for both plaintiff and defendant as traumatic epilepsy; that is, epileptic symptoms occurring as the result of trauma, simply stated, a head injury that resulted in brain damage and a scarring of brain tissue that would probably cause plaintiff loss of consciousness and psychic or sensory disturbances, unless controlled by proper medication.

Dilantin was prescribed for plaintiff, and this drug has prevented involuntary unconsciousness or seizures, and has reduced the severity of other symptoms. Some of his disturbances, such as dizziness, headaches, insomnia, and forgetfulness, were also characterized as a post concussion syndrome which should be only of a temporary nature. The plaintiff was thirty-seven years old on the date of his injury, May 21, 1961; and under the South Carolina Mortuary Table (Section 26–12 of 1962 South Caroline Code of Laws) had a life expectancy from that date of 31.75 years. All medical experts agreed that plaintiff should continue to take the drug, Dilantin, for the rest of his life in order to control his epileptic symptoms. At times plaintiff has suffered side effects from this drug, such as swelling of gums, etc.; and it became necessary to reduce the quanti-

ty he was taking. Dr. Rhett Talbert, defendant's expert, an outstanding neurologist at the South Carolina Medical College, who examined plaintiff at instance of defendant, testified that it would not be wise for plaintiff to drive an automobile unless he continued to take Dilantin regularly. It is obvious that plaintiff should not drive in the event he for any reason is forced to stop taking Dilantin or some similar medication aimed at controlling his epileptic condition.

The plaintiff, as a detail man for the William E. Merrell Company, calls on doctors selling and introducing them to the drugs of that company. His income is necessarily dependent upon the number of doctors that he is able to call upon. There was ample evidence to indicate that his physical condition caused him to see 25–30 percent fewer doctors than he saw prior to his injury, and the jury could have readily drawn the inference that his earning capacity had thereby been lessened. His commission sales of Cepacol, already established, accounts primarily for his earnings remaining the same. There was, therefore, an abundance of evidence to show a diminished earning power, which represented only one of his many elements of damage resulting from his injuries.

Another element of his damage not subject to any great amount of certainty is the subtle personality change undergone by plaintiff. His condition has affected his family adversely and caused him much anguish. The wife testified that plaintiff was not the same man that she married, and that her children could perceive a difference in their father. They found him to be more irritable, forgetful, and hard to live with. Their family activities together had been curtailed.

█ In South Carolina a plaintiff in a personal injury action is entitled to recover all damages proximately resulting from the negligent acts of the defendant. The probability of the extent of damage is not the test. The elements of damage that the jury may properly consider in determining the amount which plaintiff

is entitled to recover include loss of earning power, pain and suffering, mental anguish resulting from personal injuries, embarrassment and humiliation, and medical expenses, including any future or prospective damages resulting from permanent injuries not within the speculative realm. "These cannot be determined with certainty, and the monetary value to be placed upon them [is] a matter resting within the sound judgment of the jury." Watson v. Wilkinson Trucking Co., 244 S.C. 217, 136 S.E.2d 286, 291 (1964).

■ As stated in Bussey v. Charleston and Western Carolina Ry., 52 S.C. 438, 30 S.E. 477 (1898), actual damages include:

"[B]odily pain and anguish of mind, induced by the hurt, and all damages, present and prospective, which are naturally the proximate consequences of the act done and the injuries received, not only present loss, or that which has already occurred, from the incapacity of the injured party to attend to his ordinary pursuits, and expenses which he has incurred for other necessary outlays, but as only one action can be brought, and only one recovery had, it is proper to include in the estimate of damages compensation for whatever it may be reasonably certain will result from future incapacity in consequence of his injury. So, also, *his loss of capacity for work or attention to his ordinary business must be included, whether it be physical or mental, present or prospective.*" (Emphasis added).

As to punitive damages, in Johnson v. Atlantic Coast Line R. R., 142 S.C. 125, 139, 140 S.E. 443, 447 (1927), the Court pointed out:

[I]n the assessment of [punitive] damages, there is no exact monetary standard which can be used as a measure, and in assessment of such damages the main things to be considered are the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay. *The amounts which should be assessed as punitive damages,*

*therefore, are properly left to the discretion of the jury, subject to the right of the trial judge to approve or disapprove,* as has been so often held by this court. (Emphasis by the Court.)

Again, in Sample v. Gulf Refining Co., 183 S.C. 399, 410, 191 S.E. 209, 214 (1936), the Court said:

[W]hen under proper allegations a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages.

■ The defendant, through its agents, knowingly proceeded in an absolute disregard of the plaintiff's rights and safety in a situation that should have caused any reasonable man to hesitate. The jury was justified in determining that the character of the tort was reckless under the circumstances. The amount of the punitive damages awarded were well within reasonable limits; especially in view of the "character of the tort committed," and the ability of the defendant wrongdoer to pay, it being the thirteenth largest drug company in the United States.

■ The jury's verdict for actual damages is not clearly or grossly excessive, neither does it shock the conscience of the court, even though the jury awarded a somewhat larger sum that would have been awarded by the court in a non-jury trial. I am unable to say that the verdict was the result of caprice, passion, prejudice, corruption, or other improper motives. After a careful consideration of *all* the evidence, I am convinced that the jury's verdict is not against the clear weight of the evidence. Neither do I feel that to let it stand would result in a miscarriage of justice.

■ Defendant in the alternative has also asked the court to consider a remittitur of a portion of the verdict, which is within the discretion of this court. Defendant contends that "actual damages were so excessive as to indicate undue liberality on the part of the jury." If this court had been required to try

this case without a jury, as before stated, the award of damages would not have been as substantial as this jury did return. Nevertheless, the court is convinced that this verdict does not represent other than the sound judgment of the jury, and is within the outer limits of what is considered by this court to be reasonable and proper under the evidence. The court, therefore, will not now substitute its own judgment for that of the jury.

 Grounds four through ten of defendant's motion state instances of alleged improper argument by plaintiff's counsel to the jury. Although defense counsel objected only once to plaintiff's counsel's arguments on trial, defendant now contends that these arguments in concert amounted to material prejudice; and that the court should grant a new trial on such grounds. Defendant also contends that constant interruption of the plaintiff's counsel's arguments to the jury would have been prejudicial. There is authority for this position. London Guarantee & Accident Co. v. Woelfle, 83 F.2d 325 (8th Cir. 1936), but the better rule to this court is that such grounds *without timely objection* must be clearly prejudicial to the defendant's rights. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1939). These objections now raised by defense counsel for the first time are not of this character, and defendant's objections came too late to be considered now by the court.

Defendant's first ground of its motion is that the court erred in striking the defense of assumption of risk, and in directing the jury to disregard this defense.

In Cooper v. Mays, 234 S.C. 491, 109 S.E.2d 12 (1959), there is the suggestion that the doctrine of assumption of risk might be confined to what sometimes has been denominated as express assumption of risk:

> Assumption of risk, in its true sense, rests in contract, not tort. A true case of assumption of risk arises when an employee, without negligence on his part or that of his employer, is injured as the result of a hazard ordinarily incident to the proper performance of the duties of his employment.

 Nevertheless, under the doctrine of implied assumption of risk, it is clear that a plaintiff must fully understand a risk of harm and voluntarily proceed in the face of it. See Restatement of Torts 2d § 496 C (1965). Under either view, the defense is not applicable to the facts of this case.

 Defendant's second ground of its motion is that the court erred in admitting, over the objection of defendant, speculative testimony of Dr. Smith, a neurologist, one of the physicians called as a witness by plaintiff, who was properly qualified as an expert. This court instructed the witness at time of defendant's objection to his opinion evidence that he would only be permitted to testify as to probabilities, and not as to possibilities. His testimony was in accordance with this instruction. Admittedly, there was a conflict in testimony of the medical experts as to plaintiff's prognosis with regard to advancing years and development of arteriosclerosis upon his epileptic condition. Such witnesses were permitted to express their opinions based upon medical probabilities, and were subject to cross-examination thereon. It then became a question for the jury to determine what weight or credence, if any, it gave such testimony.

Defendant's motion for new trial on various grounds and in the alternative for new trial *nisi* is overruled, and it is so ordered.