Rayne Francine KAPUSCHINSKY, a Minor, by her Guardian ad Litem, Raymond S. Kapuschinsky, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 7646.

United States District Court
D. South Carolina,
Charleston Division.

Oct. 4, 1966.

Gedney M. Howe, Jr., Arthur G. Howe and Joseph W. Cabaniss, Charleston, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., and Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

HEMPHILL, District Judge.

Before the court is the remaining issue of damages; if due, in what compensatory amount; if not due, the reasons therefor. Previous findings favored plaintiff on the issue of liability. Kapuschinsky v. United States, 248 F. Supp. 732 (D.S.C.1966).

Feeling the necessity of supplementing the evidence previously admitted at trial this court directed further exam-ination and additional arguments on the issue of damages.

It was developed that plaintiff had undergone three additional operations and it was agreed that she would be reexamined and testimony was taken on April 21, 1966, from Dr. Oscar S. Reeder, an orthopedist who examined the child on behalf of the plaintiff, from the child's mother, Mrs. Raquel Kapuschinsky, and from Dr. Seymour Zimbler, a Lieutenant Commander in the Naval Medical Corps, who testified for the government. The child was also exhibited to the court and her gait and appearance noted. Since the April hearing no other testimony has been offered, or is expected.

From the accumulation of credible evidence this court finds, in detail, the following consequences of the negligence of defendant:

## LEFT ELBOW

Testimony revealed an infection of the left elbow which has resulted in a 15 or 20 degree limitation of extension as reported by Dr. J. M. Flowers, Jr., a physician who examined the child on behalf of the plaintiff. Dr. Flowers testified that this was a permanent condition. Dr. J. A. Siegling, who made an examination at the request of the defendant, found a 30 degree limitation of extension in the left arm. Dr. Zimbler found approximately 20 degrees limitation of extension and Dr. Reeder 10 degrees in extension and 10 degrees in supination. In their opinion this condition is permanent and can result later in traumatic arthritis of the joint.

## RIGHT ARM

Dr. R. I. Sorenson, the Navy orthopedist originally attending the child, found a 45 degree limitation of extension of the right arm as the result of infection and a pathologic fracture due to the disease process. Dr. Siegling also found a 45 degree limitation of extension of the right arm, and Dr. Zimbler a 60 degree limitation. Dr. Siegling also found a 15 degree lack of supination which would

grow less with the passage of time. Dr. Flowers also found a 45 degree limitation of motion and felt that this condition was probably permanent.

## LEFT HIP

Dr. Sorenson originally examined the child on November 26, 1961, and found a bulging in the area of both hip joints. He made a tentative diagnosis of aseptic biarthrosis of the hip joint and made an incision under local anesthetic removing one or two ounces of grossly purulent material from each hip and thereafter inserted drainage tubes. In June of 1963 he found the left hip clinically normal, but x-rays showed residual damage from the infection.

Dr. Siegling examined the child on December 31, 1963, and found some limitation of motion of the left hip in external rotation. He also reviewed x-rays taken of the child and testified "as far as the left hip is concerned there is evidence that there has been a destructive process in the joint and while the hip is not dislocated I believe, with the passage of time there would be pain in the hip later on in life."

On March 19, 1965, Dr. Zimbler performed an operation on the left hip for a subluxation of the left hip and a contracture of the adductor muscles. The adductor brevis muscle and the adductor longus tendon were sectioned or cut. Doctor Reeder found a 30 degree limitation of flexion in the left hip at present and noted that "in view of incongruities of the joint surfaces and the component parts of the hip, a traumatic arthritis could develope in early adulthood or later."

## RIGHT HIP

Both Dr. Sorenson and Dr. Siegling found an instability and telescoping of the right leg at the right hip joint.

Dr. Siegling did not feel that anything could be done to cure the injury to the right hip although it would be possible to perform an arthrodesis which would result in making the hip permanently stiff.

Dr. Zimbler, however, performed an operation on the right hip similar to that performed on the left hip on March 19, 1965, and sectioned the adductor longus muscles. This did not stabilize the hip, and on April 29, 1965, another operation was performed at which time an incision was made into the capsule of the hip joint and the hip joint opened. The capsule was markedly thickened being a half inch thick in several areas with considerable scar tissue within the hip joint. There was no true acetabulum or socket and the major portion of the femoral head, or the ball of the thigh bone which fits into the hip socket, was reduced to a "very small nubbin."

A transverse cut was made with a Gigli saw over the place where the acetabulum was supposed to be, and a two-by-one-inch bone graft was placed in this cut and fastened with wire. The child was placed in a solid hip spica cast and later on June 14, 1965, there was another operation for the removal of the wire.

Dr. Zimbler noted that osteoarthritis would probably manifest itself in both hip joints between the ages of thirty and fifty which might well require surgical procedures in one or both hips. This was confirmed by Dr. Reeder.

## RIGHT LEG

In addition to the damage to the femoral head referred to above there was also damage to the right femoral capital epiphysis and epiphyseal plate. This is the growth area of the bone in the upper part of the thigh and as a result Dr. Siegling felt that the right leg would be two inches or more shorter than the left. Dr. Sorenson on his examination in June 1963 found that the right leg was one inch shorter than the left at that time, and Dr. Flowers also found a one-inch shortening of the right leg. Dr. Siegling found only a one-quarter inch shortening of the leg but stated "as a result of the damage to the head of the femur and to the epiphysis * * * as the child grows with the dislocated hip there might be as much as two or perhaps a little more inches of shortening when

the child is grown." He recommended that an operation be performed on the left leg to slow down its growth in order to equalize the legs and testified that this operation would require ten days' hospitalization and that it would consist of making "an incision on either side of the bone taking out a block of bone and placing a graft across the bone effectively stopping the growth of that area." He estimated that the cost of this procedure and hospitalization would not exceed Two Thousand ($2,000.00) Dollars. Dr. Zimbler found that the right femoral capital epiphysis had reappeared but was unable to estimate how much it might contribute to future growth. Dr. Reeder estimated the eventual discrepancy as one to one and a half inches.

By postponing the issue of damages the court was able to fully review the testimony originally presented; additional information was sought and studied as a result of the April hearing; the progress of the child was noted, and the opportunity of another observation of the walk, disfigurement, and attendant difficulties assured the court of the benefit of comparison, first, to the testimony: secondly, to the physical condition and/or progress as a result of the passage of time.

## THE WHOLE PERSON

This court has detailed specific injuries separately to record their extent and the various prognoses [1] as to the direction and impact of her difficulties. As of this time she has a life expectancy, at age four, of 65.10 years [2] during which she may expect the plaguing, diminishing or increasing results as the doctors have described and the court from their testimony, and that of others, may envision. She presently suffers limitation of motion in both arms, and walks with a noticeable "sway back" and drags the right leg. In the normal course of growth the right leg will be shorter than the left. This can possibly be corrected by an operation, but granting a completely successful operation, there will be a resulting decrease in stature and a disproportion in the bodily measurements.

There is considerable probability of traumatic arthritis in both hip joints, testimony that this will result in pain which will increase progressively as the plaintiff becomes older.

Plaintiff will be confronted with the fact that she is permanently crippled and cannot engage in games, sports and other activities that are open to friends and contemporaries. Psychological damage is much more likely to occur to a child than to an injured adult whose character and personality have formed.

Plaintiff will be barred from many types of work and due to the hip involvements may even be handicapped in sedentary occupations.

While the majority of the doctors feel the limitation of motion in the arms will not greatly change, the testimony with regard to the injury to the hips and legs establishes that these conditions will most probably become worse. She now walks with a sway back and a dragging of the right leg. The right foot is turned out approximately forty-five degrees. There is no operative procedure available which will improve this, and Dr. Zimbler and Dr. Reeder recommended continued physiotherapy.

The physicians agree on the probability of increased pain from arthritic changes in the damaged joints as the plaintiff becomes older.

The operations recommended by Dr. Reeder and Dr. Zimbler would probably be performed after the age of thirty and the plaintiff would no longer be entitled to dependent's medical care. These would be major operations involving reconstruction of the hip joints and forty-

---

1. Prognosis is defined in Webster's New International Dictionary (1933 ed.) for medical usage as: 2. Med. act or art of foretelling the course and termination of a disease; also the outlook afforded by this * * *.

2. S.C.Code Ann. § 26–12 (Supp. 1965).

five days hospitalization and extensive therapy thereafter.

Expenses of medical treatment to date have been borne by defendant and this court takes into consideration and commends Dr. Zimbler and the other Naval personnel involved for their obvious concern for the welfare of the child and efforts expended on her behalf.

The findings and prognoses of the various physicians who examined the child varied in many details, but their testimony essentially coincides. Plaintiff is permanently crippled and later in life her condition will further deteriorate requiring extensive medical treatment. The problem is one of evaluation.

This court, then, examines the facts, the applicable law, in the light of directives that any award shall be for damages suffered, past, present, and future, first as a direct consequence, and second as *reasonably* compensatory.

## THE LAW OF DAMAGES

■ In South Carolina various decisions give guidance to the consideration here. Plaintiff seeks only actual damages. "Actual damages are when the wrongful act has caused a loss or injury which can be assessed in money, the universal and cardinal principle being that the person injured shall receive compensation commensurate with his loss or injury, and no more." Hutchinson v. Town of Summerville, 66 S.Ct. 442, 45 S.E. 8 (1903). The injured party should recover damages proportionate to the injuries sustained, Drennan v. Southern Ry., Carolina Division, 91 S.C. 507, 75 S.E. 45 (1912). And the injured may recover in amount sufficient to recompense him for his injuries, Johnson v. Atlantic Coast Line R. R. Co., 142 S.C. 125, 140 S.E. 443 (1927).

■ Before this court is a minor whose earning capacity, not yet determined, cannot, therefore, be considered,[3] but the court must realize that plaintiff, will, must, earn her keep after maturity. The court will, therefore, determine just compensation for the other elements. The elements of damage which can properly be considered in determining the amount a personal injury plaintiff may be entitled to recover include pain and suffering, medical expenses and any future damages resulting from permanent injuries. Watson v. Wilkinson Trucking Co., 244 S.C. 217, 136 S.E.2d 286 (1964); Oliver v. Blakeney, 244 S.C. 565, 137 S.E.2d 772 (1964). The testimony here records those elements as existing in this case. The court realizes that there is no yardstick by which pain and suffering, psychological damage and impairment of earning capacity can be exactly measured in dollars and cents. Medlin v. United States, 244 F.Supp. 403, 410 (W.D.S.C.1965); Wright v. Charles Pfizer Co., 253 F.Supp. 811, 813 (D.S.C.1966). But an injured may recover for such future damages as it is reasonably certain will of necessity result in the future from the injuries. Pinkussohn v. Great A. & P. Tea Co., 184 S.C. 171, 192 S.E. 283 (1937); Ford v. A. A. A. Highway Express, 204 S.C. 433, 29 S.E.2d 760 (1944). This includes such injuries for pain and suffering as will, with reasonable certainty, result. Campbell v. Hall, 210 S.C. 423, 43 S.E. 2d 129 (1947).

In Bussey v. Charleston & W. C. Ry. Co., 52 S.C. 438, 30 S.E. 477, 481, the South Carolina Supreme Court approved a trial court charge on damages as proper:

> If the jury finds for the plaintiff, then he would be entitled to recover for all actual damage which he has sustained, and this would include loss of time, nurses, as well as for bodily pain and anguish of mind, induced by the hurt, and all damages, present and prospective, which are naturally the proximate consequences of the act done, and the injuries received, not only present loss, or that which has

---

3. See Campbell v. Hall, 210 S.C. 423, 43 S.E.2d 129 (1947) which holds the court may consider earning capacity as one element of damages.

already occurred from the incapacity of the injured party to attend to his ordinary pursuits, and expenses which he has incurred for other necessary outlays, but as only one action can be brought, and only one recovery had, it is proper to include in the estimate of damages compensation for whatever it may be reasonably certain will result from future incapacity in consequence of his injury. So, also, his loss of capacity for work or attention to his ordinary business must be included, whether it be physical or mental, present or prospective.

The effort to adjust damages to "make the injured party whole" is reiterated in Baldowski v. United States, 111 F.Supp. 653, 656 (E.D.S.C.1953):

The law of South Carolina, under which this case has been tried, makes one who negligently injures another liable for compensatory damages "in proportion to the character and extent of the injury, and such as will fairly and adequately compensate the injured party." Sullivan v. Charleston & W. C. Railway Co., 85 S.C. 532, 67 S.E. 905, 906. In determining the amount of compensation for personal injuries, it is proper to take into consideration the physical and mental pain and suffering endured, the expense incurred for necessary medical treatment, the loss of time and income which result, the impairment of the ability to work and earn a livelihood, and the character of the injury and the amount that would make the injured party whole as respects the permanent injuries.

■■■■ This court finds direction in the words of the eminent Justice Cardozo: "The rule of damages must give true expression to the realities of life."[4] To be sure, plaintiff has the duty to mitigate by use of a conscientious program of exercise and physiotherapy; this court must consider the improvement possible through the use of these recommended means.[5]

■■■■ This court necessarily separates those items of damage belonging to the infant from those that belong to the parent. The latter are not to be included in the award here made.[6] Once the award to the child here, any award for the same to either or both parents is forever excluded. Loss of services of the child, and the rights of either or both parents to those earnings, if any, during the child's minority, or until sui juris belong to the parent and have no place here. The child, however, can recover for its impaired ability to labor and the diminished ability to earn following its becoming of legal age.[7] The parent, not the child, can recover for treatment had, or necessary, and expenses incidental thereto until majority;[8] in this case it is to be noted that operations have been foretold as necessary around age thirty. This court cannot, does not assess for expenses for which the father is liable, or which may accrue free to the child because of the father's military posture.[9] Under the common law the child can recover for the personal injury itself—the physical injury to the child, disfigurement, impaired health, the partial or total (permanent) loss of a use of a member of the body, any accompanying physical and mental pain and suffering.[10] The child can recover for the expenses of attempting to heal or im-

4. Broadway Photoplay Co. v. World Felin Corp., 225 N.Y. 104, 108, 121 N.E. 756, 757.

5. See Casimere v. Herman, 28 Wis.2d 437, 137 N.W.2d 73 (1965).

6. See Annot. 37 A.L.R. 11.

7. Bridger v. Asheville & S. R. R. Co., 27 S.C. 456, 3 S.E. 860, 13 Am.St.Rep. 653 (1887).

8. Tucker v. Buffalo Cotton Mills, 76 S.C. 539, 57 S.E. 626, 121 Am.St.Rep. 957 (1807).

9. At time of the hearing in April the father was in Vietnam.

10. Heart v. Sybert, 25 Chev L. (S.C.) 177 (1840).

prove the injuries, disfigurement, or lessen the pain, as the duty of mitigation would include those efforts where conscientious or reasonable. This court realizes that overall the damages awarded the child for past, present, future, pain and suffering, including those reasonably expected, and in the testimony medically predicted, arising out of future operations, traumatic arthritis, and sufferings and inconveniences directly arising therefrom, must be fair and reasonable and free from sentimental or fanciful standards. Coppinger v. Broderick, 37 Ariz. 473, 295 P. 780, 81 A.L.R. 419.[11]

 Another court might count it fortunate that the issue of anxiety as to future conditions,[12] or mental anxiety to be expected, was not emphasized in this case. Suffice it to say that in the search for truth as to the consequences reasonably expected to flow this court makes this consideration a part of its deliberations on future damages. This court is presently of the opinion that apprehension and anxiety, present, or expected in the future, would merit consideration where there is proper foundation and a sufficiency of proof. In the case at bar, the court assumes its consideration of present, past, future, pain and suffering to sufficiently cover the potential. The care of the parents, gratuitously rendered, is not before this court at this time.

Having considered, and found upon, the credible facts and the applicable law, the court directs the following:

### AWARD OF DAMAGES

 The court has endeavored to consider every aspect of the cause to effectuate *compensatory* justice in making the damage award. Admittedly not *controlling*, but worthy of note are treatments of verdicts from all over this country.[13] The questions of excessive and inadequate damages are the responsibility of the judge at the trial level, as well as the court of appellate review: Especially is this true in a non jury action. The court sits as a jury and court. It must take into consideration, among others, the changes which are forecast, by the history of past and present. Among those are the changes in the cost of living and the purchasing power of the money of the country.[14] Due consideration has been given to the magnificent effort at treatment by Navy authorities; they have discharged their duty to mitigate.

Upon consideration of the entire record the court decides:

 Plaintiff shall have judgment for actual (compensatory) damages in the sum of One Hundred Seventy-Five Thousand Dollars.

The Clerk shall enter Judgment accordingly.

And it is so ordered.

---

11. Note South Carolina cases cited in Annot. 81 A.L.R. 423.

12. See Annot. 71 A.L.R.2d 338.

13. See Annot. 46 A.L.R. 1630 (for years 1916–1926); 102 A.L.R. 1125 (for years 1926 to 1935) also 16 A.L.R.2d 3 (for years 1941 to 1950) while these deal with the problem of excess verdicts, they are,

to this court, in some sense advisory. Thompson v. Trent Maritime Co., 353 F.2d 632 (3rd Cir. 1965). Grummitt v. Sturgeon Bay Winter Sports Club, 354 F.2d 564 (7th Cir. 1965); MacDonald Engineering Co. v. Hover, 290 F.2d 301 (8th Cir. 1961).

14. 12 A.L.R.2d 611 (1950); Sanders v. Green, 208 F.Supp. 873 (E.D.S.C.1962).