James Glen RABB, Sr. and Pamela Rabb, as Guardians ad Litem for Jill Gwendolyn Rabb, Janice Ann Rabb, and James Glen Rabb, Jr., Plaintiffs,

v.

ORKIN EXTERMINATING COMPANY, INC., Defendant.

James Glen RABB, Sr. and Pamela Rabb, Plaintiffs,

v.

ORKIN EXTERMINATING COMPANY, INC., Defendant.

Civ. A. Nos. 6:87–0174–3, 6:86–1879–3.

United States District Court,
D. South Carolina,
Greenville Division.

Oct. 30, 1987.

Kathryn Williams, Foster, Covington & Patrick, Dana C. Mitchell, Mitchell & Bouton, Greenville, S.C., Homes & Thomson, Charleston, S.C., for plaintiffs.

John L. Choate, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for defendant.

### ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

On August 24, 1987, a jury in these cases returned six verdicts in favor of Orkin Exterminating Company Inc. Judgments in favor of Orkin were entered on August 25, 1987. The plaintiffs have moved for a directed verdict and a new trial on numerous grounds. Having considered their Motions, along with arguments of counsel on October 16, this Court concludes that the Motions should be denied on the grounds set forth below.

### I. THE PLAINTIFFS' MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT

In ruling on a motion for a Judgment Notwithstanding a Verdict, the motion must be denied if there is evidence sufficient to support the jury's verdict. If, taking all evidence in the light most favorable to Orkin, there is "any substantial evidence to support the jury's verdict," the motion should be denied. *See Evington v. Forbes*, 742 F.2d 834 (4th Cir.1984). In support of their motion for a Judgment Notwithstanding the Verdict, plaintiffs contend that they were entitled to a finding of negligence *per se* and a finding that the negligence of Orkin was the proximate cause of their injuries and damages. This contention ignores, however, the fact that there was ample evidence introduced by Orkin to establish that Orkin was not negligent in its application of the termiticide to the plaintiffs' residence. The evidence established a clear issue of fact regarding Orkin's adherence to the treatment specifications outlined on the EPA-approved termiticide label. Specifically, Neil Ogg and Bob Kelly, both representatives of the state agency regulating termite control, explained in detail the reasons they were unable to conclude that Orkin had misapplied any termiticide at the plaintiffs' residence. Moreover, based on the evidence presented about Orkin's treatment, Neil Ogg explained how such treatment met the standards imposed by state and federal law. This testimony was supported by testimony of Orkin treating technicians who denied any improper treatment at the Rabb residence. Clearly, the issues of fact concerning Orkin's alleged misapplication and James Rabb's contributory negligence, as well as the issues of fact regarding proximate cause and the plaintiffs' alleged dam-

ages, presented questions which were properly resolved by the jury.

## II. THE PLAINTIFFS' MOTION FOR A NEW TRIAL

Upon a motion for a new trial, a court may set aside a verdict supported by substantial evidence only if "it is contrary to the clear weight of the evidence, or is based upon evidence which is false, or is necessary to prevent a miscarriage of justice." *Ellis v. International Playtex, Inc.,* 745 F.2d 292, 298 (4th Cir.1984). In view of the vigorous defense presented at trial, the plaintiffs cannot satisfy this requirement on their general claims that the verdict is contrary to the law or evidence, or under more specific ones discussed in this Order.

A. Evidence of Increased Risk of Disease, Including the Testimony of Dr. Ian C.T. Nisbet, was Properly Excluded at the Trial of this Case

1. *The Plaintiffs Offered No Testimony that They "Most Probably" Would Sustain Any of the Diseases Claimed*

■ It is well settled in South Carolina that in a personal injury action, the verdict may include only such future damages as "reasonably certain will of necessity" result in the future from the injury. *See United Merchants and Manufacturers v. South Carolina Electric & Gas, Co.,* 113 F.Supp. 257 (D.S.C.1953), *aff'd.,* 208 F.2d 685 (4th Cir.1953); *Green v. Catawba Power Co.,* 75 S.C. 102, 55 S.E. 125 (1906); *Haltiwanger v. Barr,* 258 S.C. 27, 186 S.E. 2d 819 (1972). The "reasonably certain" rule has been described as one "which manifestly and logically will reasonably come to pass, and not a mere possibility or probability." It is a consequence "which follows the original act complained of in the usual, ordinary, and experienced course of events." *Ford v. AAA Highway Express, Inc.,* 204 S.C. 433, 29 S.E.2d 760, 762 (1944). Under the law of South Carolina, plaintiffs' failure to establish that they "most proba-

bly" would suffer from any of the unspecified diseases which they claimed might be suffered in the future was fatal to their increased risk claim which was properly excluded. *See Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986); *Cross v. Concrete Materials,* 236 S.C. 440, 114 S.E.2d 828, 829 (1960); *Lorick v. South Carolina Electric & Gas Co.,* 245 S.C. 513, 141 S.E. 2d 662, 668 (1965); *Mack v. Branch No. 12 Post Exchange,* 207 S.C. 258, 35 S.E.2d 838, 843 (1945).[1]

Ignoring this settled law, the plaintiffs in their motion for a new trial cite the opinion of *Waffen v. United States Dept. of Health & Human Services,* 799 F.2d 911 (4th Cir.1986) as support for their claim that the evidence of their alleged increased risk of disease should not have been excluded even though they could offer no testimony that there was greater than a fifty (50%) percent chance that they would develop any disease as a result of their exposure to Chlordane and/or Heptachlor. Their reliance on *Waffen* for this proposition confuses the issues of causation and harm and is clearly in error.

In *Waffen,* the Fourth Circuit affirmed the district court's determination that the plaintiff had failed to prove that the delay in her medical treatment "substantially reduced her chance of survival." *Id.* at 913. After a review of the evidence, which included uncontradicted testimony regarding the discovery of plaintiff's cancer long after medical personnel had misplaced and subsequently misrepresented the contents of radiology and x-ray reports, the court focused on the issue of "what constitutes legal injury and proximate causation in the medical malpractice context." *Id.* at 914. Applying Maryland law, *id.* at 919, 920, the court held that the plaintiff was required to establish, by a preponderance of the evidence, that the defendant's negligence actually deprived her of a "substantial possibility of survival." *Id.* at 922, 923. In dicta, the court stated that this burden did not require the plaintiff to prove her

---

1. Indeed, the lack of merit of this position is highlighted by the fact that at no time during the trial of this case did the plaintiffs offer testimony precisely identifying the diseases for which they were allegedly at risk.

chance of survival prior to the alleged malpractice was fifty-one (51%) percent or more before liability could be present.

Plaintiffs' reliance on *Waffen* is misplaced inasmuch as they attempt to merge a theory governing a plaintiff's requisite chance of survival prior to an incident of medical malpractice into a theory regarding the chance a plaintiff may incur future disease as a result of some tortfeasor's action. Most clearly emphasizing the necessary distinction between these issues is the Fourth Circuit opinion of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986), which was decided only seven months prior to the *Waffen* decision. In *Lohrmann,* Fourth Circuit observed:

> recovery of damages based on future consequences of an injury may be had only if such consequences are reasonably probable or reasonably certain. Such damages cannot be recovered if future consequences are "mere possibilities." Probability exists when there is more evidence in favor of a proposition than against it. (A greater than 50% chance that a future consequence will occur). Mere possibility exists when the evidence is anything less.

*Id.* at 1160. Contrary to plaintiffs' claims concerning the increased risk of disease issue, *Lohrmann,* not *Waffen,* provides the proper resolution of claims like those made by the plaintiffs in these actions. In *Lohrmann,* a case involving a shipyard employee who had developed asbestosis and who was afraid that he might develop cancer in the future, the trial court refused to allow any substantial references to cancer based on the fact that the risk of future injury failed to meet the reasonably probable or reasonably certain standard. In reviewing the trial court's actions, the appeals court stated that "the district judge did a commendable job in preventing this asbestosis case from being overshadowed by the dreaded specter of cancer." *Id.* The *Lohrmann* opinion is particularly persuasive in this case because its holding is based on the principles of law recognized in the South Carolina cases cited above. *See supra,* p. 426. *See also Kapuschinsky v. United States,* 259 F.Supp. 1 (D.S.C.1966) (discussed below).[2]

■ Finally, the exclusion of evidence regarding the plaintiffs' alleged increased risk of disease was proper inasmuch as plaintiffs made no offer of proof concerning their increased risk. Rule 103 of the Federal Rules of Evidence provides that "error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The plaintiffs' only claim was that they were "at an increased risk of disease." This risk of disease could have just as easily been one-tenth of one percent (0.1%) as forty-nine percent (49%). Without any definition of the increased risk claims, this evidence was properly excluded.

### 2. The Exclusion of the Testimony of Dr. Ian C.T. Nisbet was Proper

■ Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the Federal District Court of South Carolina has ordered that all plaintiffs answer certain standard interrogatories. The interrogatory regarding expert witnesses mandates that plaintiffs specify as to each expert identified "the subject matter on which he is expected to testify, the substance of the

**2.** Also worthy of mention is the fact that Fourth Circuit in *Waffen* expressly acknowledged the acceptance by some courts that in such medical malpractice cases, "the probability of survival [has to be] more than fifty (50%) percent in order for liability to be present." *Id.* at 922. Cited in support of this proposition is the South Carolina Supreme Court opinion in *Hanselmann v. McCardle,* 275 S.C. 46, 267 S.E.2d 531 (1980). *Id.* In view of *Hanselmann* and its South Carolina progeny, the fifty-one (51%) percent rule *rejected* in *Waffen* constitutes the law governing similar claims in South Carolina. In the medical malpractice context upon which plaintiffs would have this court focus, the law in South Carolina is settled: "A medical malpractice plaintiff who relies upon expert testimony must introduce evidence that the defendant's negligence *most probably* resulted in the injuries alleged." *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148, 150. (emphasis in the original).

facts and opinions to which he is expected to testify, and a summary of the grounds for each opinion." On February 11, 1987, Dr. Ian C.T. Nisbet was listed in response to this court-ordered 16(b) interrogatory as an expert by plaintiffs who "will quantify the increased risk of future illness to the Rabb family as a result of exposure to Chlordane and Heptachlor." Several weeks before trial, at the request of this Court, and then again at the trial of this case, counsel for plaintiffs represented to this Court and to counsel for Orkin that Dr. Nisbet would not quantify the increased risk of future illness to the Rabb family. As a result, this Court, acting within its discretion, properly excluded his testimony from the trial of this case. *See Eastern Auto Distributors, Inc. v. Peugeot Motors of America*, 795 F.2d 329 (4th Cir.1986).

B. Evidence of the Plaintiffs' Fear of Increased Risk of Disease was Properly Excluded at the Trial of This Case

■ The plaintiffs challenge this Court's exclusion of evidence regarding the plaintiffs' "fear of increased risk of specific disease" by asserting that this court incorrectly ruled "that plaintiffs were required to offer testimony that there was a greater than fifty (50%) percent chance that they will develop such disease as a result of their exposure to Chlordane and/or Heptachlor." Plaintiffs cite *Waffen, supra,* and *Lohrmann, supra,* in support of this contention.

This court excluded evidence of plaintiffs' fear of future disease once plaintiffs represented that they would not offer expert testimony quantifying *in any way* their risk of disease, and once it became clear that the plaintiffs would not and could not introduce medical testimony in support of any present or future personal injury claim. This ruling is in complete harmony with the law of South Carolina regarding fear of disease. In South Carolina, courts have allowed recovery from

mental anguish and emotional distress in only three situations: (1) for severe and extreme distress caused by "outrageous conduct"; (2) for a bystander who is a witness to a traumatic event; and (3) for pain and suffering attendant to some physical injury when the fear and condition is reasonably certain to occur.

■ Plaintiffs offered no evidence and, indeed, did not challenge the directed verdict entered in favor of the defendant on plaintiffs' outrage cause of action. Therefore, they cannot now maintain that Orkin was liable for "outrageous conduct" under the principles of *Ford v. Hutson*, 276 S.C. 157, 276 S.E.2d 776 (1981) and its progeny. Similarly, plaintiffs offered no evidence and made no claim that their alleged fear of getting diseases in the future satisfied the requirements for bystander recovery as set forth in *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 336 S.E.2d 465 (1985). There was no evidence, nor offer of proof, that the plaintiffs fear of disease was caused by the "contemporaneous perception" of some "accident" which occurred at a close proximity to the plaintiffs. *See Id.*[3]

The only remaining theory upon which the plaintiffs could have prevailed requires that they prove a presently existing bodily injury and that they prove the feared future condition is reasonably certain to occur. This requirement was set forth in *Kapuschinsky v. United States*, 259 F.Supp. 1 (D.S.C.1966), a case in which a severely crippled four-year-old girl sought to recover for her fear of future medical procedures that would be required because of her present deformities. The court, applying South Carolina law, held that mental anxiety as to future conditions "would merit consideration where there is a proper foundation and a sufficiency of proof." *Id.* at 8. In *Kapuschinsky*, the proper foundation and proof had been provided by expert testimony establishing that the fears were

---

3. In any event, recovery under this theory would be barred because *Kinard* was decided on October 24, 1985, eleven months after Orkin's termite treatment at the plaintiffs' residence. South Carolina law, which mandates that pro-spective application is required "when liability is created where formerly none existed," *Hupman v. Erskine College,* 281 S.C. 43, 314 S.E.2d 314 (1984), requires that there can be no recovery from bystander liability in these cases.

of future medical procedures reasonably certain to be required by the child's present injuries, which injuries would "most probably" become worse. By contrast, the record in this case contains a dearth of evidence establishing any reasonable basis for the plaintiffs' alleged fears. The plaintiffs, in fact, offered no evidence concerning any specific disease which they were at an increased risk of incurring as a result of their exposure to Chlordane and/or Heptachlor. As a result of their failure of proof in this regard, the evidence of their fears was properly excluded.

C. This Court Properly Excluded Evidence of Orkin's Discontinuance of the Use of Products Containing Chlordane and/or Heptachlor and Evidence Concerning the Manufacturer's Alleged Temporary Withdrawal of Such Products from the Market

■ Plaintiffs' challenge to this Court's ruling concerning evidence of Orkin's discontinuance of the use of products containing Chlordane and Heptachlor is also without merit. The Fourth Circuit in *Werner v. Upjohn Co., Inc.*, 628 F.2d 848 (4th Cir. 1980), addressed the parameters of Federal Rule of Evidence 407 which provides for the exclusion of subsequent remedial measures. In *Werner,* the court vacated a judgment for the plaintiff and remanded the case for a new trial based on the plaintiffs' improper introduction into evidence of subsequent remedial measures by the defendant. The court in *Werner* expressly held that when the feasibility of a product is not at issue, the general rule of exclusion under Rule 407 applies. *Id.* at 854–55. In this action, counsel for Orkin, on more than one occasion, acknowledged that there were other feasible products on the market for use as termiticides besides those containing Chlordane and/or Heptachlor.[4] The Fourth Circuit holding in *Werner* also reenforces the propriety of the exclusion of

evidence regarding the alleged withdrawal of chlordane-based products from the market by Velsicol Chemical Corporation. This evidence was properly excluded because the "relevance of the evidence [was] one more step removed from the central issue in the case." *Id.* at 859. Moreover, the separate relevance of any action by Orkin or Velsicol following the treatment date was clearly overridden by the EPA's and State of South Carolina's approval of the product applied at the Rabb residence at the time of treatment in 1984. *See Id.*[5]

D. Comments By this Court Concerning the Credibility of the Testimony of the Independent Medical Examiners, and Remarks Following the Testimony of Robert West were Not Improper

■ Plaintiffs challenge this Court's comments on the "veracity, creditability and weight" of the testimony of Dr. Charles Banov and Dr. Mario Lavia, as well as this Court's remarks following the testimony of Robert West. This position ignores the fact that a federal district court judge "has the privilege of fairly commenting on the evidence ... [and] may also express his opinion upon the facts so long as 'he makes it clear to the jury that all matters of fact are submitted to their determination.'" *United States v. Blair*, 456 F.2d 514, 519 (3rd Cir.1972). Under this law, plaintiffs' claim that comments regarding these witnesses are grounds for a new trial is patently erroneous, especially where, as here, this Court subsequently instructed the jury that they were not to consider any such comments made by the Court during the course of the trial when deciding the issues of fact submitted for their determination. In fact, this Court's charge concerning the testimony of the independent medical examiners, which cautioned that such testimony is to be considered like other expert testimony, is the

---

**4.** These representations were consistent with Orkin's written discovery responses.

**5.** Additionally, plaintiffs never attempted to demonstrate how they would introduce evidence of Velsicol's alleged withdrawal of chlor-

dane-based products from the market. In addition to the grounds stated above, any attempt to introduce such evidence would have been subject to numerous other objections, including hearsay objections.

standard charge used for decades in federal courts.

### E. This Court did Not Err in Charging the Jury the Law of South Carolina

The plaintiffs contend that this Court erred in charging the jury on the contributory negligence of Pamela Rabb and the minor plaintiffs. This allegation of error is especially surprising since this Court corrected any error that may have been made during its initial charge by subsequently instructing the jury that there was no evidence of contributory negligence on the part of these plaintiffs. Their remaining exceptions to this Court's charge to the jury are also without merit. *See generally Lohrmann,* 782 F.2d at 1164.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motions for a Judgment Notwithstanding the Verdict and New Trial are denied in their entirety.

IT IS SO ORDERED.