### 15641

FORD v. A. A. A. HIGHWAY EXPRESS, INC., AND J. B. GANTT,
and
FORD v. A. A. A. HIGHWAY EXPRESS, INC.

(29 S. E. (2d), 760)

434

August, 1943.

*Messrs. Bussey, Fulcher and Hardin,* of Augusta, Ga., and *Messrs. Hendersons & Salley,* of Aiken S. C., Counsel for Appellants,

*Messrs. Williams & Busbee,* of Aiken, S. C., Counsel for Respondent,

April 13, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The appeal involves two cases growing out of a highway traffic accident on January 1, 1943, in the County of Aiken, which resulted in the death of S. D. Albright. At the time of the accident Albright was in a wagon drawn by a mule, traveling in the direction of Clearwater, and the wagon was hit from the rear by a heavily loaded motor truck of the Express Company.

The actions were brought by the plaintiff as administrator for the benefit of the two minor children of the deceased. The main action was for the recovery of damages for wrongful death, under Lord Campbell's Act; the second was for property damage to the mule, wagon, and the loss of certain merchandise which was being transported in the vehicle. By agreement, the two causes were consolidated and tried together. In the main action judgment was rendered against the defendants in the amount of $14,000.00, actual damages; and in the property damage suit judgment was rendered for $300.00, actual damages. The trial Judge, upon motion for a new trial, reduced the verdict in the action for wrongful death, to $13,000.00, and in the property damage case to $175.00. These reductions were duly accepted of record by the plaintiff.

The complaint contains the usual specifications of negligence appertaining to traffic accident cases including failure on the part of the defendants to keep a proper look out for other travelers on the highway; driving the truck at a high and dangerous rate of speed; operating a heavily loaded truck upon the public highway with defective brakes.

The deceased was driving his wagon on the right of the centre of the public highway with the left-hand wheels on the paved cement, and the right-hand wheels on the shoulder. It is the contention of the plaintiff that he was driving straight ahead at the time of the accident; while the appellants contend that just prior to the crash he had guided his mule and wagon to the left, without looking for vehicles ap-

proaching from the rear, and that he was guilty of contributory negligence in so doing.

The circumstances attendant upon the accident were these. The mule was being driven at a fast walk. Behind the wagon was a Ford automobile; about a hundred feet behind the automobile was the truck of the corporate defendant containing a load of about 14,600 pounds. The Ford automobile turned to its left and passed the wagon. The driver of the truck, the defendant Gantt, did not see the wagon until the Ford automobile turned out to pass it. The truck, traveling at a speed of thirty miles per hour, then attempted to pass. Gantt, throughout his testimony, stated that when he started around the wagon he was too close to it, but expressed the belief that he could have avoided the collision if the deceased had not turned his mule and wagon to the left. He also said that his brakes were defective, but that even if they had been good, he was too near the wagon to use them effectively.

Appellants complain of the instruction given by the trial Judge on the measure of damages. After charging the jury that it was proper to take into consideration the mental shock and grief sustained by the children, and the deprivation of their father's companionship, experience and judgment, the Judge continued: "You can also give consideration to any testimony to the loss of his ability to earn money for the support, maintenance, care and protection of his minor children. And since only one action can be brought therefor, it would be proper to include all damages, present and prospective, *which are naturally the proximate consequence of a wrongful act,* provided, of course, there was a wrongful act."

The criticism of appellants is directed against that portion of the above charge which we have italicized. Appellants' counsel say that this instruction violates the rule generally followed in this jurisdiction, that future or prospective damages must be confined to such as the evidence renders it reasonably certain will result from the original injury.

While South Carolina follows the "reasonable certainty" rule, other equivalent expressions may be used, provided the jury, when considering the instruction as a whole, are not allowed to go into the realm of speculation and conjecture. For a comprehensive discussion of this subject, showing the diversity of opinion among the various jurisdictions, see annotations 81 A. L. R., 423, and 85 A. L. R., 1010.

In *Green v. Catawba Power Co.*, 75 S. C., 102, 55 S. E., 125, 126, 9 Ann. Cas., 1050, an instruction was held to be erroneous which contained this expression: "Which he is liable to endure in the future by reason of his injury." The use of the word "liable" was disapproved of, because it was held that it signified something that might happen without importing reasonable certainty that it would happen. The Court held that the instruction in such cases should be that the verdict may include such damages as it is reasonably certain will, of necessity, result in the future from the injury.

In *Brewer v. Northwestern R. Co.* of South Carolina, 151 S. C., 415, 149 S. E., 124, an instruction which allowed the plaintiff to recover damages for such pain and suffering as "he may hereafter suffer," was held to be incorrect as allowing speculative damages, the error being that the damages were not limited to those which it was reasonably certain would result in the future from the original injury.

However, in *Shramek v. Walker*, 152 S. C., 88, 89, 149 S. E., 331, where the jury were instructed that they could assess actual damages for such suffering as the plaintiff "may undergo" in future from the alleged injury, it was held that the word "may," objected to, was used in the sense of futurity, synonymous with "will," and did not involve the objectionable element of chance or speculation. Other illustrative cases are *Chesser v. Tyger River Pine Co.*, 155 S. C., 356, 152 S. E., 646; *Pinkussohn v. Great Atlantic & Pacific Tea Co.*, 184 S. C., 171, 192 S. E., 283; and *Lockhart Power Co., v. Askew*, 110 S. C., 449, 96 S. E., 685.

That portion of the instruction given by the presiding Judge which is complained of might be termed technically erroneous, in that he failed to use the expression "reasonable certainty" with reference to prospective damages. But we do not think that the charge permitted the jury to embark upon conjecture or mere possibilities.

Under the instruction given, future damages were limited to such as were naturally the proximate consequence of defendants' wrongful act. We think a fair construction of this phraseology means, and was understood by the jury to mean, such consequential losses as were reasonably certain to accrue in the future as the result of the injury complained of. The instruction, in our opinion, did not invite conjecture or unrestrained speculation on the part of the jury; nor by this language were the jury induced to believe that in allowing damages, they were authorized to give compensation for some remote, uncertain, and problematic future loss. The word "naturally," as here used, implies that which is reasonably certain to happen in the common experience of mankind. It imports that the result must be one which manifestly and logically would reasonably come to pass, and not a mere possibility or probability. So that a natural consequence is one which follows the original act complained of in the usual, ordinary, and experienced course of events. A result, therefore, which might be anticipated as reasonably certain. We cannot believe that the jury was misled by the charge as given, or that the charge was prejudicial.

The appellants vigorously urge that they were seriously prejudiced by the admission of certain objectionable evidence offered by the plaintiff in rebuttal. In addition to a general denial, they had set up the affirmative defense of contributory negligence, and alleged that the deceased immediately before the collision, guided his vehicle in front of the truck as it was attempting to pass, which ac-

tion on his part made it impossible for the driver of the truck to avoid running into the wagon. It is claimed that the plaintiff, while offering his evidence in chief, anticipated this defense, and elicited from several witnesses, upon direct examination, testimony to the effect that Mr. Albright did not turn his mule to the left before the collision occurred. However, as the record shows, the evidence introduced in chief was directed mainly to the establishment of the fact that the wagon was hit from the rear. The testimony of one of the witnesses, Mr. Glover, graphically describes the accident: "He (Mr. Albright) was on his right-hand side and then the A-model Ford pulled around Mr. Albright and the big truck ran right up into the back of Mr. Albright's buggy (wagon)—sort of swerved, like he tried to miss it, but ran up on the back of the buggy (wagon) and pitched it upon the mule and skidded it down the pavement * * *."

It is true that several witnesses for the plaintiff, when examined in chief, stated that the mule and wagon did not turn to the left, but proceeded straight ahead without deviating, but we think this testimony would have been generally competent to describe the situation of the vehicle at the time of the collision, even if the affirmative defense had not been pleaded.

The defendants offered testimony tending to show that Mr. Albright turned to his left just before the collision, and that the truck, instead of hitting the rear of the wagon, struck the *left front wheel*. We now come to the main controversial point. In order to refute the testimony that the point of impact was the left front wheel of the wagon— which had not been specifically pleaded by the defendants,— the plaintiff in rebuttal, offered in evidence the four wheels which were said to have been on the wagon at the time it was demolished. An inspection of the wheels showed that the left front wheel was not broken down, althought some of its spokes were loosened, and possibly one or two missing,

but that the left rear wheel had been completely destroyed, leaving only the rim.

Appellants objected to the introduction of the wheels in evidence, upon the ground that they had closed their case, and that the plaintiff having anticipated the affirmative defense by offering evidence tending to show that the wagon was not turned to the left, should not be allowed to offer anything by way of rebuttal, with reference to the wagon wheels. The trial Judge overruled the objection. The Court held: " * * * Now, as to which wheel was hit, I don't think it is an essential part of the plaintiff's case, but it seems to me that would be a matter which would be raised in the first instance by the affirmative answer of contributory negligence, and it seems to me, in view of that, the plaintiff should have a right to attempt to negative affirmative defense by offering this in reply. I think under that theory, I should admit the testimony and I feel that I should overrule the objection." We see no error in this ruling.

The answer of the defendants did not put the plaintiff upon notice that the contention would be made that the point of collision between the truck and the wagon was the left front wheel of the latter. The affirmative defense of contributory negligence was to the effect that immediately before the collision the wagon was turned to the left, in front of the truck as it was attempting to pass, which action made it impossible for the driver of the truck to avoid running into the wagon. But nowhere is it alleged at which spot the wagon was hit. Only when the defense offered their testimony did it clearly appear that they were attempting to establish that the wagon was hit at the left front wheel.

But it is urged that the plaintiff was put upon notice that this contention would be made when one of his witnesses was being cross examined. This witness, a young colored boy named Lewis, had testified on direct examination that the defendant's truck ran into the back of the wagon. Upon cross examination he stated that the wagon

was hit on the left front wheel. However, on redirect examination, he said that he did not mean to say the left-hand front wheel, but meant the left rear wheel of the wagon had been struck. Counsel for the defense argues that this was sufficient to put the plaintiff upon notice that testimony for the defense would later be directed to show that the left front wheel was the point of impact, and that the plaintiff having undertaken to anticipate the entire defense should have proceeded to rebut this in chief. We are unable to share this view. The most natural conclusion to draw under the circumstances was that counsel by his cross examination of Lewis merely intended to attack his credibility in the eyes of the jury.

We do not think that the case of *Halsey v. Minnesota-South Carolina Land & Timber Co.,* 162 S. C., 281, 160 S. E., 843, is controlling here. It is clear to us that the plaintiff did not undertake to anticipate one of the main points of the affirmative defense. It did not clearly develop until the defendants offered their evidence, that it would be contended that the truck hit the left front wheel of the wagon. In view of this, the trial Judge committed no error in allowing the introduction of the wagon wheels in evidence.

The general rules for the introduction of testimony must necessarily be so often applied or relaxed, according to circumstances apparent only to the Court engaged in conducting the trial, that a strict uniformity at all times is not to be expected, and indeed, in some instances would prove injurious to the interests of justice. The Courts are agreed, accordingly, that the order of proof must be left to the sound discretion of the trial Court, and such Court will not be reversed unless it clearly appears that the Court has abused its discretion. Wigmore on Evidence, Vol. 6, § 1873, p. 517.

The jury heard all of the evidence, and they have heard none but what was proper for them to hear. The only objection is that they did not hear it at the appropriate time, and

that the defendants were thereby prejudiced. We do not think that the contention is sound that it was incumbent upon the plaintiff to offer the wagon wheels in evidence while offering his evidence in chief. This evidence was purely in rebuttal, and had no place in the case until the defendants offered evidence tending to show that the truck hit the left front wheel of the wagon.

If appellants had desired to present evidence by way of rejoinder, they should have moved for permission to do so. *Walker v. Southern Bell Telephone & Telegraph Co.*, 92 S. C., 188, 75 S. E., 1024.

Even if it be considered that the plaintiff attempted to anticipate the affirmative defense, but failed to cover all matters, rebuttal evidence is generally allowed. 64 C. J., § 176, p. 154.

Appellants complain of the instruction given in the following language: "I also charge you that pecuniary loss is not necessary to be proven, but that the plaintiff may, if he desires to do so, offer evidence as to pecuniary loss."

This charge is supported by the cases of *Petrie v. Columbia & G. R. Co.*, 29 S. C., 303, 7 S. E., 515, and *Barksdale v. Seaboard Air Line Ry.*, 76 S. C., 183, 56 S. E., 906, and is free from error.

Finally, it is insisted that the trial Judge erred, in his order granting a new trial *nisi*, in failing to reduce the verdict in the wrongful death case below $13,000.00; and it is contended that even as reduced, this amount under the law and the facts of the case is arbitrary, capricious, and excessive.

Mr. Albright died intestate, leaving a young daughter of seventeen years, who was married to a soldier; and a son about twelve years of age. His wife was dead. The deceased at the time of his death was 68 years of age, and according

to the mortality tables had a normal life expectancy of 9.47 years. He was an itinerant merchant or peddler, and sold his wares throughout the textile mill district of Aiken County; had an established home, and his two children lived with him. The married daughter testified that she was actually dependent upon her father for support; that she received no support from her husband. It is undisputed that the small boy was wholly dependent upon his father for his support, maintenance and education.

In passing upon the motion for a new trial, the trial Judge took into consideration the fact that although the married daughter was receiving no support from her husband, under the Servicemen's Allowance Act, 37 U. S. C. A., § 201, *et seq.* she was entitled to receive $50.00 per month by merely applying for it, as long as her husband remained a soldier. And it was in consideration of this that the verdict of $14,000.00 was reduced to $13,000.00.

We have carefully reviewed the order refusing a new trial, and find no error.

The principle is well settled in this jurisdiction that the question of granting a new trial on the grounds that the verdict is not supported by the evidence, or is excessive, arbitrary, and capricious, is left to the sound discretion of the trial Judge, who hears the evidence and sees the witnesses, and who is in a much better position than this Court to judge of the righteousness of verdicts. The decision of the trial Judge in such cases will not be disturbed unless his discretion is clearly abused. *Mishoe v. Atlantic Coast Line R. Co.*, 186 S. C., 402, 197 S. E., 97; *Chesser v. Tyger River Pine Co.*, *supra*; *Hall v. Northwestern R. Co.*, *of South Carolina*, 81 S. C., 522, 62 S. E., 848. We find no abuse of discretion.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER, and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR, and OXNER concur.