## BALDOWSKI et al. v. UNITED STATES.

### Civ. A. No. 3167.

United States District Court
E. D. South Carolina, Aiken Division.

April 16, 1953.

---

Thurmond, Lybrand & Simons, Aiken, S. C., Boller & Yow, Augusta, Ga., for plaintiff.

Ben Scott Whaley, U. S. Atty., Charleston, S. C., Russell D. Miller, Asst. U. S. Atty., Florence, S. C., Henderson, Salley & Cushman, Aiken, S. C., for defendant.

WYCHE, Chief Judge.

This action was commenced by Mrs. Cora Mae Baldowski, Mrs. Mary Cox and Cleveland Thomas Cox, by his guardian ad litem, Thomas W. Cox, to recover damages for injuries to person and property under the Federal Tort Claims Act, 28 U.S.C.A. § 1346. The cases of Mrs. Mary Cox and Cleveland Thomas Cox, by his guardian ad. litem, Thomas W. Cox, have been disposed of by agreement between the parties, leaving for trial only the case of Mrs. Cora Mae Baldowski against the defendant.

Mrs. Baldowski's claim arises out of a collision which occurred on the 5th day of November, 1951, at approximately 10:30 o'clock a. m., at a point on United States Highway No. 78, approximately one-half mile east of the corporate limits of the City of Aiken, South Carolina, between a 1949 Plymouth sedan automobile owned and being operated by the plaintiff Mrs. Cora Mae Baldowski, and a 1951 Plymouth sedan automobile being operated by J. Ernest Thorpe, who was at the time of the collision performing his duties as a rural mail carrier for the defendant, and acting within the scope of his employment.

I viewed the scene of the collision and the approaches to it, with the consent, and in the presence of counsel for the parties, the last day of the trial, immediately following the concluding arguments of counsel.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause as follows:

### Findings of Fact

The plaintiff Mrs. Cora Mae Baldowski, a widow, then sixty-five years of age, and in good health, was driving her automobile within the limits of the law, east along the right side of a straight and level section of paved United States Highway No. 78, one-half mile east of Aiken, South Carolina. She was en route from Augusta, Georgia, to Windsor, South Carolina, and was accompanied by Mrs. Mary Cox, occupying the front seat, and Cleveland Thomas Cox, a minor, occupying the rear seat of her automobile.

J. Ernest Thorpe, an United States mail carrier, while in the performance of his duties in such capacity, delivering and collecting mail along his established route and immediately preceding the collision, was driving his automobile at a reasonable rate of speed, west along his right side of the highway. Upon reaching a point thereon, near its junction with a dirt road, without any signal or warning of his intention to do so, Mr. Thorpe turned left across the center line and into collision with the Baldowski automobile. The front of the Thorpe automobile struck the left front of the Baldowski automobile. The Baldowski automobile came to rest a short distance from the point of the collision on its right side and parallel to the highway in a ditch. The Thorpe automobile came to rest on the paved surface of the highway, facing north, with approximately four-fifths of its length on the south of the center line thereof.

Mrs. Baldowski first saw the Thorpe automobile when it was several hundred yards away. It was meeting them, proceeding on its side of the highway in a normal manner.

Mr. Thorpe reduced the speed of his automobile for the purpose of turning left across the highway and into the dirt road. He had mail to deposit in the box of Mrs. L. J. Burckhalter, located on the other side of the paved highway near the southeastern junction of the paved highway and the dirt road. The junction with the dirt road represented the end of the first of three sections of his mail route. The second section of his route commenced after serving the Burckhalter mail box, and proceeded back in an easterly direction along United States Highway No. 78, the direction the Baldowski car was traveling. At the time of the collision it was his intention to turn left and cross the paved highway to serve the Burckhalter mail box and then to turn around and serve the second section of his route. Papers were located on the rear seat, letters being delivered and collected were located on the front seat and the pouch provided him by the Post Office Department was located in the foot of the front of the automobile.

From the testimony of all the witnesses, the condition of the respective vehicles after the collision, the pictures illustrating the scene, the attendant physical facts and a view of the scene of the accident, I must conclude that Mr. Thorpe, while proceeding in a westerly direction on United States Highway No. 78, in the performance of his duties as rural mail carrier for the defendant, failed to keep a proper lookout, and without any signal, warning or notice of his intention to do so, in a negligent, careless manner, turned his vehicle to the left across the center line of the highway into the path of, and into collision with the oncoming Baldowski automobile, and that such conduct was the direct and proximate cause of the collision, and the consequent cause of personal injuries to the plaintiff Mrs. Cora Mae Baldowski, and the damage to her automobile.

The plaintiff Mrs. Cora Mae Baldowski was not guilty of any negligence which contributed as a proximate cause to the collision, or to her injuries and damages.

As a result of the collision, plaintiff Mrs. Cora Mae Baldowski received painful, serious and permanent injuries, which may

be summarized as follows: Considerable shock; lacerated wound of forehead, three fractured ribs, a fracture of both bones of the right forearm above the wrist joint, dislocated backward; fracture of left arm bone, known as the humerus; dislocation of right kneecap; fracture of right fibula, which was comminuted, or in pieces; compound fracture of right tibia with detachment of internal maleolus; backward dislocation of ankle joint; lacerated wound of left knee joint, partially encircling joint with exposure of knee cap; evoltion of skin of posterior surface of knee joint and thigh, with exposure of vessels of the popliteal space, which is the space behind the knee joint into which the deeper vessels run, from which she suffered hemorrhage; multiple contusions and abrasions of abdomen, arm, one side of face and body; she had to have opiates from time to time; she was put to sleep and the dislocation of the ankle was reduced and put in drainage; the fractured bones were reduced by traction by pulling on the ankle; the hemorrhage was controlled with force or pressure with hemostats or clamps and vessels ligated; the torn area was drained and the wound extending or encircling the knee sewed up; about two weeks after this was done she developed a large hematoma, which is an accumulation of blood, in the thigh, posterially; she was put to sleep again and an incision made in order to evacuate the large hematoma, and packing was put in it until it eventually healed; it was impossible to reduce the fracture of the internal maleolus because that part of the bone had been knocked off completely. The fracture of the right humerus was treated by putting it in a traction apparatus with a Thomas splint, pulling the arm out in order to get the ends of the bone in line, for about six weeks, but union was not obtained. She was again put to sleep, an open operation was performed and a bone plate put on, the bone plate holding the bone ends together with screws, which remained on for about two months, after which she developed osteomyelitis, that is, an inflammation within the canal of the bone. She was put to sleep again and the bone plate removed. She still had an ununited fracture, which in the course of time, was hoped, would unite, but it did not. It was necessary to re-operate on the arm and put a pin extending from the upper portion of the shaft of the bone through the bone ends in order to try to hold it in position, in an attempt to get union. To date she has had three operations on her arm in which anesthesia was necessary. The metal pin that runs through the bone will eventually have to be removed, which will necessitate another operation. The fractured ribs were strapped. She has been under treatment since the date of the accident until the present time. It is impossible to tell how long it will be necessary for her to continue under a physician's care. At first she had to remain in bed flat on her back; then the head of the bed could be raised, and after a time pillows could be put behind her back and she could be tilted over from one side to the other. She was in the hospital for a period of two months and in bed at home for an additional period of two months. Thereafter she was permitted to sit up for short periods of time.

The plaintiff Mrs. Cora Mae Baldowski as a result of the injuries she received has an un-united fracture of the right foot; the fibula physically has not united, and the knob, or the internal maleolus is still out of position; she has one hundred per cent. disability in that limb. She can walk some with a brace, but not very well, and she is not able to stand on her foot very long. It is non-weight-bearing without the brace. She will have to wear a brace all of her life. She may have to have what is known as an arthrodesis, which means to stiffen the ankle—make it absolutely stiff, which is done by chiseling into the bones of the foot and mortising them and making it stiff. If such an operation were performed successfully she would have between fifty and seventy-five per cent. disability of her right leg. She might not be improved by having such an operation. On account of the dislocation of her right kneecap she has a partial ankylosis of her knee joint. She can flex it to about a right angle. She has a fifty per cent. permanent disability of the leg from the standpoint of the knee, whether the ankle was involved or not. As a result of the injury to the right arm, she has

a partial ankylosis of her right shoulder joint. She has a twenty-five per cent. permanent disability of the right arm. As to the left arm—she now has a partial ankylosis of her shoulder joint. If she gets good union in the fracture, she will probably have a percentage of disability. If she doesn't get union, she will be able to move the arm slightly, and would have eighty per cent. disability of that arm. She will suffer considerable pain all the time if there is an un-united fracture. She is permanently disabled and will never be able to get around with any degree of comfort, even with the brace which she now wears.

The injuries which the plaintiff Mrs. Cora Mae Baldowski received have prevented her from performing any kind of work from the time of the collision to date, and will always handicap her in attempting to walk and in attempting to engage in activities to earn a livelihood.

In the treatment of her injuries, Mrs. Baldowski has been forced to incur expenses for medical and surgical treatment, hospitalization, nursing care, special brace, and repairs thereto, to the date of the trial, totalling $4,330.25. She is still under the care of her doctors, and from the medical testimony adduced at the trial, it is evident that she must undergo additional major operations on her right leg and ankle and to her left arm, if the conditions of these members are to be improved. She probably will be under the care of physicians during the remainder of her natural life and will probably have to incur considerable additional hospital, doctors', nursing and other medical bills.

Damages to plaintiff's automobile amounted to $893.

By reason of plaintiff's personal injuries, physical and mental pain and suffering endured, expenses incurred for necessary medical and surgical treatment, the loss of time and income which have resulted, the impairment of her ability to work and earn a livelihood, and the character of the injuries and considering the amount that would make the injured plaintiff whole as respects her permanent injuries, and pain and suffering as it is reasonably certain will of necessity result in the future from the injuries, hospitalization, nursing care, special brace and repairs thereto, and property damage, she has been damaged in the total sum of $49,723.25.

### Conclusions of Law

This court has jurisdiction of the parties and of the subject matter of this action.

The collision was not caused nor contributed to by negligence of the plaintiff.

The defendant's employee, J. Ernest Thorpe, while acting within the scope of his employment and course of his duties was guilty of actionable negligence, which was the direct, proximate and efficient cause of the injuries to the plaintiff's person and property and of the resultant expense which she necessarily incurred.

The negligence of the defendant's employee was such that the defendant, had it been a private person, would be liable to the plaintiff under the law of South Carolina, where the collision occurred.

The law of South Carolina, under which this case has been tried, makes one who negligently injures another liable for compensatory damages "in proportion to the character and extent of the injury, and such as will fairly and adequately compensate the injured party". Sullivan v. Charleston & W. C. Railway Co., 85 S.C. 532, 67 S.E. 905, 906. In determining the amount of compensation for personal injuries, it is proper to take into consideration the physical and mental pain and suffering endured, the expense incurred for necessary medical treatment, the loss of time and income which result, the impairment of the ability to work and earn a livelihood, and the character of the injury and the amount that would make the injured party whole as respects the permanent injuries. Plaintiff's expectancy is 11.55 years. Code of Laws of South Carolina, 1952, § 26–12. At the time of her injuries she was earning $50 per week. Sullivan v. Charleston & W. C. Railway Co., supra; Bussey v. Charleston & W. C. Railway Co., 52 S.C. 438, 30 S.E. 477; Campbell v. Hall, 210 S.C. 423, 43 S.E.2d 129, 132. And, in addition thereto, it is proper to take into consideration such "pain and suffering as it is reasonably certain will of necessity, re-

sult in the future from the injury". Campbell v. Hall, supra; Pinkussohn v. Great Atlantic & Pacific Tea Co., 184 S.C. 171, 192 S.E. 283; Green v. Catawba Power Co., 75 S.C. 102, 55 S.E. 125, 9 Ann.Cas. 1050; Ford v. A. A. A. Highway Express, Inc., 204 S.C. 433, 29 S.E.2d 760.

The plaintiff Mrs. Cora Mae Baldowski is entitled to recover for the damage to her automobile in the amount of $893.

■ The plaintiff Mrs. Cora Mae Baldowski is entitled to recover for her medical expenses, including doctors' bills, hospital bills, nursing care, brace, and repairs thereto, the amount of $4,330.25.

The plaintiff Mrs. Cora Mae Baldowski is entitled to recover for her other elements of damages and for her serious personal injuries and damages, as hereinabove set forth, the sum of $44,500.

Based upon the foregoing findings of fact and conclusions of law, I am of the opinion that the plaintiff Mrs. Cora Mae Baldowski should have judgment against the defendant for the total sum of $49,723.25.

Attorneys for the plaintiff Mrs. Cora Mae Baldowski are entitled to be paid a fee of 20 per cent. of the recovery, to be paid out of said recovery and not in addition thereto.

Judgment is hereby ordered to be entered accordingly.