Sadie Bell **RAY**

v.

**UNITED STATES of America.**

**Civ. A. No. 66–286.**

United States District Court
D. South Carolina,
Florence Division.

Jan. 4, 1968.

Connor & Connor, Kingstree, S. C., for plaintiff.

Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Plaintiff moves to amend judgment in her favor upon grounds the award was inadequate. This court thereupon re-

---

views its Order of August 28, 1967 awarding her Forty Thousand Dollars damages. In the original proceeding defendant did not contest the issue of liability, nor has it contested then or since certain material facts. By virtue of the accident in which she was injured this 58 year old woman was rendered totally disabled for gainful employment. She was making $60.80 per week at the time. Her life expectancy was agreed as 17.5 years. She is, and will for the rest of her life be, horribly crippled and unsightly in appearance.

Under the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671 et seq., the law of the state where the accident occurred, in this case South Carolina, governs the measure of damages. Richards v. United States, 369 U.S. 1, 82 S. Ct. 585, 7 L.Ed.2d 492 (1962). In the Eastern District of South Carolina it was stated in Baldowski et al. v. United States, 111 F.Supp. 653, 656 (1953):

> The law of South Carolina, under which this case has been tried, makes one who negligently injures another liable for compensatory damages "in proportion to the character and extent of the injury, and such as will fairly and adequately compensate the injured party." Sullivan v. Charleston & W. C. Railway Co., 85 S.C. 532, 67 S.E. 905, 906.

South Carolina has ruled loss or impairment of earning capacity, consequent to injuries to the person, is a proper element of compensation. Campbell v. Hall et al., 210 S.C. 423, 43 S.E.2d 129; Halseden v. Atlantic Coast Line Ry. Co., 214 S.C. 410, 53 S.E.2d 60. In the latter opinion it is stated:

> In arriving at the verdict the jury could consider the loss of future earning power which requires a consideration of all matters which relate to the issue of the disability, the effect which that disability will have on plaintiff's capacity to work, the ex-

tent to which the disability will impair the plaintiff's earning capacity, the present value of all losses due to his impaired earning power, Jones v. Atlantic Refining Co., D.C., 55 F.Supp. 17, such physical pain and suffering as reasonably certain will of necessity result in the future from the injury * * *.

South Carolina does not require that the injured be employed at the time of injury in order to recover. Matthews v. Porter, 239 S.C. 620, 124 S.E.2d 321:

> Even though the respondent was not employed at the time of her injury this would not deprive her of her right to damages for impairment of earning capacity. Evidence of what the respondent had previously earned, when employed, was properly admitted for consideration by the jury.

At trial plaintiff introduced no other evidence of her work life expectancy than her general good health and regular employment. The impression she left with the court was that she was an honest, dependable worker. She is a wiry type of individual. She indicated she intended to work as long as she was able.

Defendant insists that she would not work beyond 62, at which age she could draw social security. There was no evidence as to the monetary amount to be expected. There was evidence that most of the workers at the particular plant retired at age 65, but this was not due to mandatory requirement.

South Carolina has not ruled on the question of work-life expectancy. The General Rule is stated in 15 Am.Jur. 501, Damages, Section 91, to be: "One who is injured in his person may recover for loss or diminution of his earning capacity during his *entire expectancy of life* and is entitled to such amount as will compensate him for such loss." In ruling on the applicability of its mortuary table [1], South Carolina has ruled

---

1. S.C.Code Anno. 26-12 provides: When it is necessary, in any civil action or other mode of litigation, to establish the life expectancy of any person from any period in his life, whether he be living at the time or not, the table below shall be re-

that a jury may find what a person is capable of earning in a year and then take his or her expectancy and find out what their earning capacity would be for a lifetime. Clifford v. Southern Ry. Co., 87 S.C. 324, 69 S.E. 513 (1910). By the language of the statute [2] this court is guided to the conclusion that the legislature did not, does not, intend that either social security benefit ages, retirement ages, or other collateral assumptions or calculations should be written into the formula used. One may say life expectancies are averages, and there is a "delusive exactness" [3] in damage formulae individually or collectively, but life is always subject to the winds of chance (or as Presbyterians believe, predestination). With this in mind this court finds persuasion in the reasoning in Cuneo v. Philadelphia Transportation Co., 405 Pa. 532, 176 A.2d 896 (1961) wherein, in offering an award of $41,000 to a woman 65 years of age, who was earning $58.95 weekly at the time of injury the court stated:

> At the time of the accident plaintiff was 65 years of age. The appellant's argument for a new trial on the basis of an excessive verdict is predicated mostly on this fact. It points out that Mrs. Cuneo is eligible for social security payments, and thus could not have been expected to continue working for the remainder of her life expectancy, even if she had not been injured.

> It is a mistaken assumption that because one is eligible to social security benefits at 65, this age represents the end of the line for productive work on the part of the average person. Longevity is not so rare in modern life that it must be dismissed as

bizarre. The advances made in medical science, the widely publicized rules of health and better living have all contributed to a constantly increasing life span which one has a right to enjoy free of pain and suffering caused by tortious happenings. Therefore, it is error to say that at 65 one can no longer work remuneratively and therefore must be cast on the economic ash heap.

There is no reason dogmatically to assume that, given reasonable health, one cannot for some years continue as efficiently after the 65th milestone had been reached as for the few years which preceded that heretofore awesome marker. The ripened experience, the matured intellect, the self-control, the storehouse of knowledge gathered through the years all so contribute to the efficiency of the human mechanism that it may continue to produce after 65 years with an effectiveness that no employer or society at large should want unthinkingly to discard.

Dr. Edward P. Hickman, economic specialist witness for the government, computed that in order for a person to invest at 4 percent in order to receive $60.00 weekly for 16.18 years, it would require $38,631 before taxes, $34,190 after taxes. Her accumulated loss of earnings between date of injury and date of trial is $3716.80 [4] before taxes. Admittedly, future loss of earnings should be reduced to present value in order not to give plaintiff a windfall. Chesapeake & O. Ry. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Thompson v. Camp., 6 Cir., 163 F.2d 396; O'Connor v. United States, 269 F. 2d 578 (2nd Cir. 1959). These cases

---

ceived in all courts and by all persons having power to determine litigation as evidence (along with other evidence as to his health, constitution and habits) of the life expectancy of such person. In determining a person's age as of any particular time periods of six months or more beyond the last full year shall, in using the table below, be treated as one year.

2. Amended in 1963 as to the *table* of expectancy, but not as to the language employed.

3. Conte v. Flota Mercante Del Estado, 277 F.2d 664 (2nd Cir. 1960).

4. This figure was not contested.

reason that if a plaintiff is to receive all his damages, past and future, in a lump sum, he must seek out a safe investment for the damages awarded to him for future loss of income. Thus, the lump sum to be given plaintiff for future loss of income is a sum which, together with the interest it will earn when invested at the highest possible safe interest rate, will be sufficient to replace each year the loss of income which the court predicts she will sustain in that year.

Defendant introduced evidence that plaintiff could invest her allotment for future loss of income safely at between a 4 percent and a 5 percent rate of interest. The court in Alexander v. Nash-Kelvinator Corp., 271 F.2d 524 (2nd Cir. 1959), held that the use of an interest rate of less than 4 percent was erroneous. If future loss of income is not discounted at a safe interest rate of 4 percent, plaintiff will receive compensation in excess of that necessary to "fairly and adequately" compensate her, contrary to the rule in *Sullivan*, supra.

Upon consideration of all of the factors involved here this court determines that in addition to past loss of income in the amount of $3716.20, which is reduced by 20 percent[5] for income tax purposes to $2972.96, the present value of plaintiff's loss of earnings until she is 62 years of age is $9062. Assuming her good health and apparent good habits gave her the remainder of the 17.5 year expectancy, she could, and under the evidence the court believes would work for the additional three years until 65, until retirement age, possibly longer. Using 12 years of useful life,[6] including the three working years between 62 and 65, and another five years of more limited earning capacity, of

which she has been deprived, a figure of $12,000 after taxes, and by reduction to present value is not excessive.

Medical expense was itemized upon trial, totalled $4529.71.

Pain and suffering, past, present, and future, is an item of consideration here and this court believes an award of $9500.00 is not unreasonable.

The plaintiff has suffered great disfigurement. She will carry her crippled and unsightly figure into every phase of life, her home, stores, neighbors and church. The ever present halt in her gait is surely a ghastly burden. She is a female. The Almighty created beauty of form and face more specially for the female. Sadie Bell Ray (and no other woman of reasoned mind) would sell her natural attractiveness for any price. This court feels the necessity of being conservative and awards the amount of $10,000 for disfigurement. The amount cannot compensate, nor restore, but it is adjudged by this court to be a just figure under the circumstances.

This court finds its previous award inadequate and directs judgment for plaintiff:

| | |
|---|---|
| For past loss of earnings | $ 2972.96 |
| For earnings loss from date of trial to age 62 | 9062.00 |
| For future loss of earnings, age 62 to end of expectancy | 12000.00 |
| For medical expense | 4529.71 |
| For pain and suffering | 9500.00 |
| For disfigurement | 10000.00 |

The Clerk shall enter judgment for plaintiff for $48,064.67.

And it is so ordered.

---

5. Ten percent is considered fair in view of relatively small wage of plaintiff.

6. This court does not accept, under the facts of the case presented, defendant's theory that social security retirement age is the cut off date for work life expectancy. Consideration is therefore given to her previous good health which would, under the testimony, project her earning age to 65. The fact that she survived the wreck and its impact evidences her strong constitution. The record reflects a life of good habits. These and other factors are considered by this court as contemplated by the South Carolina mortuary table.