283 S.C. 268 (1984)
322 S.E.2d 461
Maude S. McGAHA, Respondent,
v.
J. Lewis MOSLEY, Jr., Richard Whiteside, Mrs. Ben S. Irvin, Energymizer Systems of America, Inc., and Southeastern Energy Systems, Inc., of whom Richard Whiteside is the Appellant. Appeal of Richard WHITESIDE.
0289
Court of Appeals of South Carolina.
Heard May 14, 1984.
Decided October 1, 1984.
*269 *270 *271 H. Wayne Floyd, Oswald & Floyd, P.A., West Columbia, for appellant.
Darra Williamson Cothran, Leventis, Ormand & Kamber, Columbia, for respondent.
Heard May 14, 1984.
Decided Oct. 1, 1984.
BELL, Judge:
Maude McGaha sued Richard Whiteside and others to recover $8,000 she invested in a corporation called Southeastern Energy Systems, Inc. Her complaint stated causes of action for common law fraud and for violation of the South Carolina Uniform Securities Act (the Act).[1] At the close of the evidence, the trial judge directed a verdict for Whiteside on the fraud claim. The jury returned a verdict of $8,000 for McGaha on the statutory claim. Whiteside appeals. We affirm.
Southeastern Energy Systems, Inc. was organized in early 1978 to market the "energymizer," a device installed on an electrical switch box, purportedly to regulate the current and thereby reduce the consumption of electricity. Whiteside was the sole incorporator, president, and a fifty per cent shareholder of the corporation. Lewis Mosley owned the remaining *272 fifty per cent of Southeastern's shares and managed its business. McGaha was a part time receptionist for Southeastern. According to Mosley's testimony, "[S]he didn't tell us how we had to run the company. That was up to us to run the company."
After it was incorporated, Southeastern entered a franchise agreement with Energymizer Systems of America, Inc., for the exclusive right to market "energymizers" in six South Carolina counties. The agreement also contained a provision prohibiting assignment by Southeastern without the written consent of Energymizer Systems of America, Inc.
In May 1978, Whiteside and Mosley met with McGaha. According to McGaha, Mosley did most of the talking. He told her the corporation needed money and would have to close its doors unless it obtained immediate financing. He told her she could have ten per cent of the corporation's "stock" if she would invest her money in the business. As a result of these conversations, McGaha withdrew $8,000 from her savings account to invest in Southeastern. On June 11, 1978, Southeastern obtained written authorization from Energymizer Systems of America to assign up to forty-nine per cent of its "stock" in the franchise.
On June 23, 1978, Southeastern executed a written agreement assigning McGaha "an undivided ten (10%) percent interest" in its franchise agreement with Energymizer Systems of America. The assignment stated McGaha was "entitled to Ten (10%) percent of the net profits realized by Southeastern Energy Systems, Inc., from its marketing of Energymizer Systems in the State of South Carolina." McGaha paid the corporation $8,000 for this interest in the franchise agreement.
In September 1978, McGaha quit her job with Southeastern. Shortly thereafter, the corporation ceased doing business. McGaha demanded a refund of her $8,000 to no avail. This suit followed.

I.
On appeal, Whiteside contends he could not have violated the Act because the written assignment is not a "security" within the meaning of Section 35-1-20(12) of the Act. That section reads, in pertinent part:

*273 "Security" means any ... certificate of interest or participation in any profit-sharing agreement, ... [any] investment contract, ... or, in general, any interest or instrument commonly known as a "security" ....
No South Carolina case has addressed the meaning of the word "security" under the Act. However, the definition of "security" in Section 35-1-20(12) is taken almost verbatim from Section 2 of the federal Securities Act of 1933, 15 U.S.C. § 77b. In construing the South Carolina Uniform Securities Act, our courts look for guidance to cases interpreting the federal statute. Bradley v. Hullander, 272 S.C. 6, 249 S.E. (2d) 486 (1978).
Since the securities laws are remedial in nature, courts have uniformly held they should be liberally construed to protect investors. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed. (2d) 564 (1967); Securities & Exchange Comm'n v. Glenn W. Turner Enterprises, Inc., 474 F. (2d) 476 (9th Cir.1973); Rochkind v. Reynolds Securities, Inc., 388 F. Supp. 254 (D. Md. 1975). An instrument may be included within any of the Act's definitions of a "security," if on its face it answers to the name or description contained therein. Tcherepnin v. Knight, supra.
We have no difficulty concluding the written assignment of an interest in the profits under the franchise agreement was a "security" as defined by Section 35-1-20(12). It gave McGaha an interest in Southeastern's profits under a franchise agreement with Energymizers of America. Thus, it was on its face a "certificate of interest or participation in [a] profit-sharing agreement," which the Act defines as a "security." See Tcherepnin v. Knight, supra; Securities & Exchange Comm'n. v. Addison, 194 F. Supp. 709 (N.D. Tex. 1961); cf. International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed. (2d) 808 (1979), n. 11.

II.
Whiteside next contends that even if the instrument was a security, no violation of Section 35-1-1490 was proved against him. That section imposes liability on any person who

*274 (2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading....
Whiteside's argument falls into two parts. First, he contends the jury verdict was against the weight of the evidence on the elements of the materiality and falsity of any statements made to McGaha. Second, he asserts the trial judge should have withdrawn the question of his liability from the jury because there was no evidence that he, Whiteside, made any statements to McGaha before the transaction was consummated. We address these points in order.

A.
In reviewing a jury verdict, this Court is not free to weigh the evidence presented at trial. Allstate Insurance Co. v. State Farm Mutual Automobile Insurance Co., 260 S.C. 350, 195 S.E. (2d) 711 (1973); Willis v. Floyd Brace Co., 279 S.C. 458, 309 S.E. (2d) 295 (S.C. App. 1983). If there is any evidence which reasonably supports the jury's finding, it must be sustained on appeal. Stevens v. Sun Publishing Co., 270 S.C. 65, 240 S.E. (2d) 812 (1978), cert. denied 436 U.S. 945, 98 S.Ct. 2847, 56 L.Ed. (2d) 786; Hall v. Palmetto Enterprises II, Inc. of Clinton, S.C. 317 S.E. (2d) 140 (S.C. App. 1984).
We find evidence in the record to support the jury's verdict that untrue and material statements were made to McGaha in connection with the offer and sale of an investment interest in Southeastern. McGaha and her husband both testified she was told she would receive stock in the corporation in return for her $8,000. The evidence also showed Southeastern obtained written consent from Energymizers of America to transfer stock. What McGaha actually received was not stock, but a right to share in the profits from the franchise agreement. Thus, the statement that she would be given stock for her money was untrue.
Because a right to share in profits is significantly different from stock ownership, the statement was also material. Under the profit-sharing agreement McGaha had no equity in the corporation, no vote on the conduct of its *275 affairs, no right to elect directors or management, and no right to inspect corporate records. She would have enjoyed these rights as a stockholder. These differences are material, because they are "matters as to which an average prudent investor ought reasonably to be informed before purchasing." Bradley v. Hullander, supra, 272 S.C. at 24, 249 S.E. (2d) at 495.

B.
Whiteside's argument that he cannot be held liable because he did not make the offending statements to McGaha is also without merit. The evidence showed Whiteside was present when Mosley offered McGaha stock in the corporation. The jury could reasonably find that Whiteside, as president and a principal stockholder of the corporation, materially aided the transaction by his presence. They could also find that his failure to speak or correct Mosley's statements constituted an "omission to state a material fact" in violation of Section 35-1-1490. In addition, Section 35-1-1500 makes every person who directly or indirectly controls a seller of securities, every officer of such seller, and every employee of such seller who materially aids in the sale liable to the same extent as the seller under Section 35-1-1490. As an officer and controlling person of the seller, Whiteside was liable to McGaha to the same extent as the corporation.

III.
Whiteside's final argument concerns the failure of the trial judge to exclude the testimony of two witnesses.
As part of her case in chief, McGaha called Stanley V. Lewis, the Deputy Securities Commissioner for South Carolina, as an expert witness. Lewis was asked to give his opinion on whether the written assignment of profits was a "security." The trial judge permitted the testimony. Whiteside takes exception to this ruling on the ground that Lewis's testimony was "not proper subject matter for expert testimony."
The introduction of evidence is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal unless he clearly abused his discretion. Hall v. Palmetto Enterprises, supra. We find no abuse of *276 discretion in permitting the testimony. In any event, we fail to see how Whiteside was prejudiced by the testimony, since the trial judge ruled as a matter of law that the instrument in question was a security. See RCA Photofone, Inc. v. Carroll, 174 S.C. 183, 177 S.E. 23 (1934); Cochran v. Ollis Creek Coal Co., 157 W. Va. 931, 206 S.E. (2d) 410 (1974).
Whiteside's other exception relates to the calling of McGaha's husband as a rebuttal witness. The husband was not listed as a witness in answer to the defendant's interrogatories. McGaha did not call him as a witness during her case in chief. Because the husband was present with McGaha, Mosley, and Whiteside when the assignment of profits was delivered, her attorney called him to rebut certain testimony of Mosley concerning events surrounding the consummation of the transaction. Over Whiteside's objection that the husband was a surprise witness, the trial judge permitted him to testify.
The plaintiff in a civil action must first produce and disclose the entire evidence in support of his case; after the defendant has offered all his evidence, the plaintiff may reply. Clinton v. McKenzie, 36 S.C.L. (5 Strob.) 36 (1850). Reply testimony should be limited to rebuttal of matters raised in defense; it should not be used to complete plaintiff's case in chief. Daniel v. Tower Trucking Co., 205 S.C. 333, 32 S.E. (2d) 5 (1944). Admission of reply testimony is within the discretion of the trial judge, and his decision will not be disturbed on appeal absent a showing of abuse of discretion. Vernon v. Provident Life & Accident Ins. Co., 266 S.C. 208, 222 S.E. (2d) 501 (1976); Ford v. A.A.A. Highway, Express, 204 S.C. 433, 29 S.E. (2d) 760 (1944). When Mr. McGaha's testimony was offered, the trial judge cautioned McGaha's counsel to limit examination to matters in reply. Whiteside does not contend the testimony was improper as rebuttal.
Rule 90 and other Circuit Court rules pertaining to pretrial discovery were adopted to require litigants to disclose the essential elements of their case, so that the outcome of trial would be the result of a full examination of all relevant facts and issues rather than the efforts of one side to surprise the other through the introduction of unexpected testimony. Hodge v. Myers, 255 S.C. 542, 180 S.E. (2d) 203 (1971); see Reed v. Clark, 277 S.C. 310, 286 S.E. (2d) 384 (1982). *277 To encourage compliance with discovery procedures, trial courts can impose sanctions upon parties who violate the rules, including exclusion of witnesses whose identities have been withheld. E.g., Duke v. Westvaco Development Corp., 279 S.C. 464, 309 S.E. (2d) 293 (S.C. App. 1983). Imposition of sanctions is a matter committed to the discretion of the trial court. Moran v. Jones, S.C. 315 S.E. (2d) 136 (S.C. App. 1984). Among the factors to be considered by the trial judge in making his decision are the type of witness involved and the degree of surprise to the other party. Laney v. Hefley, 262 S.C. 54, 202 S.E. (2d) 12 (1974).
Since reply testimony is limited to issues raised by the defense, the element of surprise is eliminated when reply is properly restricted. While Mr. McGaha's testimony may have been admissible in Mrs. McGaha's case in chief, it was not essential to establishing her claim. She had no obligation to anticipate Whiteside's defenses in her answers to interrogatories or her case in chief. See Ford v. A.A.A. Highway Express, supra.
We view Whiteside's claim that he was unfairly surprised by Mr. McGaha's testimony with skepticism. Whiteside was sole incorporator, president, and a major shareholder in Southeastern, Mr. McGaha's employer. Mr. McGaha was present, along with Whiteside, at the meeting where Mrs. McGaha purchased her interest in the franchise agreement. Thus, he was a person known to Whiteside as one having knowledge of the transaction. Moreover, Mr. McGaha's testimony was in direct reply to witnesses presented as part of Whiteside's case. Since "[t]he issues addressed in rebuttal were the identical issues identified and pursued by [Whiteside's] own witness[es]," Palmetto Alliance v. South Carolina Public Service Comm'n., 319 S.E. (2d) 695 (S.C. 1984), and since Whiteside knew well in advance of trial that Mr. McGaha had knowledge of facts underlying this action, we find nothing to substantiate a claim of unfair surprise. Whiteside's final contention is thus without merit. See Kirkland v. Peoples Gas Co., 269 S.C. 431, 237 S.E. (2d) 772 (1977).
Affirmed.
SHAW and GOOLSBY, JJ., concur.
NOTES
[1] Sections 35-1-10 through-1590, Code of Laws of South Carolina, 1976.