THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Jerry Marvin Galbreath, Appellant.
 
 
 

Appeal From Oconee County
 Alexander S. Macaulay, Circuit Court Judge

Unpublished Opinion No. 2005-UP-361
Heard April 5, 2005  Filed May 23, 2005

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, Office of Appellate Defense, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Asst. Attorney General William Edgar Salter, III, Office of the Attorney General, all of Columbia; and Solicitor Druanne Dykes White, of Anderson, for Respondent.
 
 
 

PER CURIAM: Jerry Marvin Galbreath appeals his convictions for murder and possession of a firearm during the commission of a violent crime.  He argues the trial court erred in denying his motion for a directed verdict and in allowing rebuttal testimony of an investigating officer.  We affirm.
FACTS
On the evening of December 27, 2002, Galbreath and his roommate, Johnny Dillard, partied with the victim, Shawn Bates, and the victims girlfriend, Pamela Ayers.  Both Ayers and Dillard testified that Galbreath and Bates huffed paint, smoked marijuana, and drank alcohol while the four of them drove to a bar.  While Bates was in the bar, Galbreath repeatedly told Ayers that he was going to rape her and kill Bates.   
Ayers told Bates that Galbreath was harassing her.  When the four returned to the car, Bates and Galbreath began fighting, and Galbreath sustained minor cuts and bruises.  Ayers testified the fight began because Bates threatened to take Galbreaths car, to which Galbreath replied Bates would be a dead man and die that night if he tried.  Dillard, who was driving the vehicle, pulled over and ordered Bates and Ayers out of the vehicle.  Once Dillard and Galbreath arrived back at Galbreaths home, Dillard parked the car in the garage, and the men went inside.  Dillard testified that they continued drinking.  At one point Galbreath told Dillard, I will get the little fucker for busting my eyes.  I will get even with the bastard.   
After being dropped off, Bates and Ayers went to the home of Lynn Davis, who lived near the location where Dillard had left the couple.  Bates requested Lynn Davis take him to Galbreaths home so he could retrieve a baseball cap that he had left in the car.  Davis, accompanied by her friend, Kimberly Skinner, and Ayers, drove Bates to Galbreaths home.  Although Ayers, Davis, and Skinner testified that Bates seemed calm on the way to Galbreaths house, Ayers admitted that he was angry because he did not have his hat.    
After arriving at Galbreaths residence, Bates tried to open the garage door but could not.  He hit the garage door with a brick and smeared leaves onto the door.  He also leaned a ladder against the house, but he did not attempt to use the ladder for any purpose.  Frustrated, Bates returned to Daviss vehicle, and Davis backed out of the driveway.  As the vehicle was leaving the driveway, Galbreaths porch light came on, and Bates told Davis to stop the car.  Bates exited the vehicle and walked toward the house with his arms out with his hands spread.  Ayers, Davis, and Skinner heard a gun shot.  Bates then returned to the vehicle where he stated Galbreath had shot him.  Ayers saw Galbreath close the glass door.  Davis drove away from Galbreaths residence, and an ambulance was called, but Bates did not survive.
Dillard testified that he awoke around midnight because he heard knocking or banging on the house.  He could also hear Bates outside yelling about wanting his belongings from the car.  Dillard returned to bed once the knocking stopped, but woke again moments later when he heard Galbreath and Bates cursing at each other.  Dillard then heard a gun shot, whereupon he arose from bed and found Galbreath holding a .22 rifle out the open doorway.  Dillard claimed Galbreath told him that he shot Bates, but wished [Bates] would have tried to break in.     
Neither Galbreath nor Dillard called 911.  According to Dillard, Galbreath listened to his police scanner before going to bed.   
The police arrested Galbreath the following morning, on December 28, 2002.  In May of 2003, a jury found Galbreath guilty of murder and possession of a firearm during a violent crime.  The trial court sentenced him to thirty years imprisonment for murder and five years imprisonment for possession of a firearm during a violent crime.  This appeal followed.    
LAW/ ANALYSIS
Galbreath claims the trial court erred in denying his motion for a directed verdict because he was acting in self-defense and in defense of habitation.  We disagree.
When ruling on a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight.  State v. Morgan, 282 S.C. 409, 411, 319 S.E.2d 335, 336 (1984).  In reviewing the denial of a motion for a directed verdict, the evidence is viewed in the light most favorable to the State.  State v. Fennell, 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000).  If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury.  State v. Pinckney, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000).  A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged.  State v. McHoney, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001).  Thus, in the present case, unless it can be said as a matter of law that self-defense or defense of habitation was established, it was not error to submit the case to the jury.
In order to establish that a crime was committed in self-defense, a defendant must show: 

 (1) he was without fault in bringing on the difficulty;
(2) he actually believed he was in imminent danger of losing his life or of sustaining serious bodily injury;
(3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief;
(4) he had no other probable means of avoiding the danger.

State v. Long, 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997).  Defense of habitation is analogous to self-defense, except that a person attacked on his own premises, without fault, has the right to claim immunity from the law of retreat.  Id.  However, as with self-defense, the defendants subjective belief of imminent danger must be reasonable.  State v. Lee, 293 S.C. 536, 537, 362 S.E.2d 24, 25 (1987).  
Here, the trial court properly submitted the case to the jury because there was evidence that Galbreath did not believe he was in imminent danger of losing life or sustaining serious bodily injury.  Dillard, Ayers, and Davis testified that Bates was unarmed.  Furthermore, Ayers and Davis stated that Bates approached Galbreaths house with his arms out with his hands spread, making the fact that Bates did not have a weapon evident.  Dillard testified that Galbreath declared, after the shooting, that he wished [Bates] would have tried to break in, which provides some evidence that Galbreath did not believe Bates was trying to break into his home.  Therefore, we find the State presented enough evidence to survive a directed verdict motion.    
Galbreath also claims the trial court erred in allowing Officer Chastains testimony as rebuttal evidence to the statement Galbreath made to police because the State elicited the statement during cross-examination.  We disagree.
When the defendant has completed his case, the prosecuting party may offer evidence in reply. 
McGaha v. Mosley, 283 S.C. 268, 276, 322 S.E.2d 461, 466 (Ct. App. 1984).  The admission of reply testimony is within the sound discretion of the trial judge, and there is no abuse of discretion if the testimony is arguably contradictory of and in reply to earlier testimony.  State v. Todd, 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986).  Reply testimony can also be used to clarify matters that were confused during the defendants case, to rebut an affirmative defense raised during the defendants case, and most importantly in this case, to complete the impeachment of a defense witness.  See, e.g., State v. Van Williams, 212 S.C. 110, 113, 46 S.E.2d 665, 666-67 (1948); Ford v. A.A.A. Highway Express, 204 S.C. 433, 441-42, 29 S.E.2d 760, 763-64 (1944) (holding plaintiff was on notice that rebuttal evidence may be offered when cross-examination of plaintiffs witness elicited contradictory evidence).  
During his testimony, Galbreath stated he heard a big crash when Bates threw objects against the garage door.  He also heard Bates screaming like an animal.  He testified he was afraid for his life because he heard Bates say, Ill kill you old man.  Most importantly, Galbreath testified that Bates had a knife when Dillard kicked him and Ayers out of the vehicle.  He also testified that he was sorry about the boy. 
However, during cross-examination, the State presented the statement Galbreath made to Officer Chastain, which detailed many of the events of December 27-28, 2000, including Batess threats and the fight in the car.  In this statement, Galbreath failed to mention that he felt his life was in danger or that Bates was screaming and throwing objects against the garage door.  Galbreath also neglected to mention to Officer Chastain, whom he knew well, that Bates had been armed with a knife earlier in the evening.  Furthermore, in contrast to what Galbreath testified to at trial, in his statement to Officer Chastain, Galbreath said that he felt sorry for Batess mother for losing a kid, but he didnt feel bad for [Bates].   
After the defense rested its case, the State called Officer Chastain to rebut Galbreaths testimony.   Officer Chastains testimony impeached Galbreaths trial testimony because Galbreath did not say the same things on the stand that he had said to Officer Chastain regarding the incident.  Therefore, the trial court did not abuse its discretion in allowing the rebuttal testimony.  See Todd, 290 S.C. at 214, 349 S.E.2d at 340 (finding reply testimony was admissible where witnesss testimony contradicted part of defendants testimony).  
CONCLUSION 
For the reasons stated herein, Galbreaths convictions are
 AFFIRMED.
HEARN, C.J., and KITTREDGE and WILLIAMS, JJ., concur.